[Cite as *State v. Phillips*, 2010-Ohio-1547.]

STATE OF OHIO, MONROE COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLEE, | ) | |
| | ) | |
| VS. | ) | CASE NO. 08-MO-6 |
| | ) | |
| LEE PHILLIPS, | ) | OPINION |
| | ) | |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS: Criminal Appeal from County Court of Monroe County, Ohio Case No. 08TRC10

JUDGMENT: Affirmed

APPEARANCES:
For Plaintiff-Appellee

Thomas A. Hampton
Assistant Prosecuting Attorney
P.O. Box 480
Woodsfield, Ohio 43713

For Defendant-Appellant

Attorney Mark Morrison
117 North Main Street
Woodsfield, Ohio 43793

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: April 1, 2010

DONOFRIO, J.

{¶1} Defendant-appellant Lee A. Phillips appeals his conviction in the Monroe County Court for first-offense operating a vehicle under the influence (OVI). The central issues are whether the trial court erred in failing to suppress the field sobriety and breath test results.

{¶2} On January 5, 2008, Ohio State Highway Patrol Trooper Jeff Herink was following Phillips northbound on State Route 800 in Monroe County, Ohio, and observed him drive left of center and off the right side of the roadway. (Tr. 8, 21.) Trooper Herink continued to follow Phillips as he turned onto State Route 145 where he drove left of center again and was weaving within his own lane. (Tr. 8, 21.)

{¶3} Trooper Herink initiated a traffic stop and approached Phillips to ask him for his driver's license, registration, and proof of insurance. While conversing with Phillips, Trooper Herink noticed an odor of an alcoholic beverage and that Phillips' eyes were glassy. (Tr. 9.)

{¶4} Trooper Herink had Phillips return with him to the patrol car and sit in the front passenger seat. Trooper Herink continued to notice an odor of alcohol. (Tr. 10.) When asked, Phillips acknowledged having a "couple" drinks earlier in the evening. (Tr. 10.) While in the car, Trooper Herink conducted the Horizontal Gaze Nystagmus (HGN) test. (Tr. 11-14) Due to the location of the traffic stop on a sloped driveway and near a curve in the highway, Trooper Herink did not conduct any other field sobriety tests. (Tr. 14, 27-28.) Trooper Herink took Phillips to the Woodsfield Police Department where Phillips submitted to a breath test resulting in a .179 BAC. (Tr. 16.) Trooper Herink cited Phillips for driving left of center in violation of R.C. 4511.25 and first-offense OVI in violation of R.C. 4511.19(A)(1)(h).

{¶5} Phillips pleaded not guilty and the case proceeded to discovery and other pretrial matters. Of particular relevance to this appeal, Phillips filed a motion to suppress the field sobriety and breath test results. He argued, in part, that Trooper Herink did not have probable cause to detain him for testing and that the HGN test was unreliable and not performed in accordance with applicable standards. The trial

court held a hearing on the motion on March 5, 2008, with Trooper Herink testifying and various exhibits admitted into evidence. Another hearing was held on May 21, 2008 to address issues concerning the breath test results. In entries filed March 19, 2008, and July 2, 2008, the trial court overruled the motion. The court found that there was probable cause to detain and test Phillips. Concerning the HGN test, the court found it relevant and admissible for purposes of determining probable cause, but noted that the state had stipulated that the test results would not be used at trial. (Tr. 3-4.)

{¶6} On July 30, 2008, Phillips pleaded no contest to first-offense OVI, preserving all issues raised in pre-trial motions for appeal. The trial court sentenced Phillips to 10 days in jail with 7 days of that suspended, $250.00 fine, 176 days driver's license suspension with occupational driving privileges, and 1 year of reporting probation. The trial court stayed the sentence pending this appeal that followed.

## STANDARD OF REVIEW

{¶7} Phillips raises three assignment of error, all of which are directed to the trial court's overruling of his motion to suppress the results of the field sobriety and breath tests. The standard of review in an appeal of a suppression issue is two-fold. *State v. Dabney*, 7th Dist. No. 02BE31, 2003-Ohio-5141, at ¶9, citing *State v. Lloyd* (1998), 126 Ohio App.3d 95, 100-101, 709 N.E.2d 913. Since the trial court is in the best position to evaluate witness credibility, an appellate court must uphold the trial court's findings of fact if they are supported by competent, credible evidence. Id., citing *State v. Winand* (1996), 116 Ohio App.3d 286, 288, 688 N.E.2d 9, citing *Tallmadge v. McCoy* (1994), 96 Ohio App.3d 604, 608, 645 N.E.2d 802. However, once an appellate court has accepted those facts as true, the court must independently determine as a matter of law whether the trial court met the applicable legal standard. Id., citing *State v. Clayton* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906. This determination is a question of law of which an appellate court cannot give deference to the trial court's conclusion. Id., citing *Lloyd*.

**PROBABLE CAUSE TO ARREST FOR OVI – FIELD SOBRIETY TEST(S)**

{¶8}   Phillips' first two assignments of error are directed to whether there was probable cause to arrest him for OVI, focusing only on the field sobriety tests (and lack thereof) and whether the one test that was performed was done so properly. They state, respectively:

{¶9}   "THE OFFICER NEVER ACQUIRED PROBABLE CAUSE TO ARREST THE DEFENDANT FOR O.V.I. DUE TO OFFICER'S FAILURE TO COMPLY WITH THE NHTSA STANDARDS FOR THE ADMINISTRATION OF STANDARDIZED FIELD SOBRIETY TESTS AND HIS FAILURE TO ADMINISTER ALL THE SFST'S."

{¶10} "IT IS PREJUDICIAL ERROR TO ADMIT EVIDENCE OF FIELD SOBRIETY TESTS WITHOUT OFFERING THE NHTSA TRAINING MANUAL OR FAILURE OF THE STATE TO REQUEST JUDICIAL NOTICE OF THE METHOD OF PROPER ADMINISTRATION OF NHTSA OR OTHER FIELD SOBRIETY TESTS."

{¶11} The standard for determining whether there was probable cause to arrest for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. *State v. Homan* (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (Superseded by statute on other grounds as stated in R.C. 4511.19(D)(4)(b).) That determination is based on the totality of the facts and circumstances surrounding the arrest. Id.

{¶12} The Ohio Supreme Court has recognized that since the amendment of R.C. 4511.19 by the Ohio Legislature in 2003, field sobriety tests are no longer required to be conducted in strict compliance with standardized testing procedures. *State v. Schmitt*, 101 Ohio St.3d 79, 801 N.E.2d 446, 2004-Ohio-37, at ¶9. "Instead, an officer may now testify concerning the results of a field sobriety test administered in substantial compliance with the testing standards." Id. This holding further enforces R.C. 4511.19(D)(4)(b), which provides in part, that evidence and testimony of the results of a field sobriety test may be presented "if it is shown by clear and convincing

evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration."

{¶13} As a preliminary matter, a review of Phillips' suppression motion raises the question of whether it set forth a sufficient legal and factual basis to challenge the field sobriety test results. Crim.R. 47 provides:

{¶14} "An application to the court for an order shall be by motion. A motion, other than one made during trial or hearing, shall be in writing unless the court permits it to be made orally. It shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. It shall be supported by a memorandum containing citations of authority, and may also be supported by an affidavit.

{¶15} "To expedite its business, the court may make provision by rule or order for the submission and determination of motions without oral hearing upon brief written statements of reasons in support and opposition."

{¶16} It is well recognized that a suppression motion must set forth an adequate basis for the motion. *State v. Shindler* (1994), 70 Ohio St.3d 54, 58, 636 N.E.2d 319. The Ohio Supreme Court has held that "[i]n order to require a hearing on a motion to suppress evidence, the accused must state the motion's legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." Id. at syllabus, construing and following Crim.R. 47 and *Xenia v. Wallace* (1988), 37 Ohio St.3d 216, 524 N.E.2d 889. After the defendant sets forth a sufficient basis for a motion to suppress, the burden shifts to the state to demonstrate substantial compliance with the testing standards or regulations involved. *State v. Johnson* (2000), 137 Ohio App.3d 847, 851, 739 N.E.2d 1249.

{¶17} Thus, when a motion to suppress the results of the field sobriety tests merely asserts that they were not performed in substantial compliance with the

NHTSA standards and no factual basis is provided for why the defendant believed the officer did not comply with the NHTSA standard by pointing to facts that occurred during the tests or to instructions that the defendant believed did not comply with the standards, those allegations are not specific enough to shift the burden to the state to demonstrate compliance with the NHTSA guidelines.

{¶18} In this case, Phillips asserted three grounds for suppression of the field sobriety tests: (1) the tests were "not sufficiently reliable to establish impairment by alcohol"; (2) the officer did not have "sufficient qualifications to be deemed an expert and such tests were not performed in accordance with applicable standards (NHTSA)"; and (3) the officer "performed tests not approved by NHTSA and are not standardizes [sic]." Phillips never gave a factual basis for why he believed the officer did not comply with the NHTSA standards. He pointed to no specific facts that occurred nor to any instructions by Officer Herink that he believed failed to comply with the NHTSA manual.

{¶19} This court has previously found such blanket statements not specific enough to shift the burden to the state to demonstrate proper compliance with the NHTSA regulations. See *State v. Arnold*, 7th Dist. No. 05-CO-60, 2006-Ohio-5228, at ¶12 ("Appellant failed to allege facts in his motion as to how * * * [the officer] instructed him to perform the tests and how they did not comply with NHTSA standards. For this reason, the trial court did not err in denying appellant's motion to suppress the results of his field sobriety tests."); *State v. Gozdan*, 7th Dist. No. 03-CA-792, 2004-Ohio-3209, at ¶10 ("merely stating that * * * [the field sobriety test] was not performed in strict compliance provides no factual basis to support the allegation.")

{¶20} Based on this court's prior holdings, Phillips never shifted the burden to the state to prove that Trooper Herink administered the field sobriety tests in substantial compliance with the NHTSA standards. This alone is sufficient to affirm the trial court's judgment overruling Phillips' motion to suppress.

**{¶21}** Nonetheless, even disregarding the insufficiency of Phillips' suppression motion, his specific arguments under these assignments of error still fail. Under his first assignment of error, he points out that Trooper Herink did not have him perform the two other standardized field sobriety tests – the one leg stand test and the walk and turn test. Phillips adds that the one test he did perform, the HGN test, was unreliable because his Bell's Palsy condition affects his face and eyes.

**{¶22}** Under his second assignment of error essentially alleging an improper foundation for the admission of the HGN results, Phillips relies primarily on *State v. Matus*, 6th Dist. No. WD-06-072, 2008-Ohio-377. In *Matus*, the Sixth District Court of Appeals found that there was no testimony as to the particular standards used to perform the field sobriety tests, nor was there a request from the state for the trial court to take judicial notice of the NHTSA manual and standards.

**{¶23}** At the suppression hearing in this case, there was no testimony that the HGN test was performed in compliance with the NHTSA or comparable reliable standards; nor did the state offer anything to show that it was performed in substantial compliance or that standards were followed. Thus, Phillips may have had a basis for suppressing the results of the HGN test.

**{¶24}** However, each of these arguments ignores well-settled law that regardless of whether the tests were performed in compliance with NHTSA standards, the facts and circumstances of this case provided ample probable cause to arrest Phillips for OVI. As the Ohio Supreme Court observed in *Homan*:

**{¶25}** "While field sobriety tests must be administered in strict [now substantial] compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded for lack of strict compliance." *Homan*, 89 Ohio St.3d at 427, 732 N.E.2d 952.

{¶26} Aside from the defects that occurred in the administration of the field sobriety tests in *Homan*, the Ohio Supreme Court concluded that the totality of the facts and circumstances in that case supported the officer's decision to arrest the driver for OVI. Those facts and circumstances included erratic driving, the driver's red and glassy eyes, the smell of alcohol on the driver's breath, and the driver's admission that they had been consuming alcoholic beverages.

{¶27} So, too, in *Matus*, even though the Sixth District found merit with appellant's argument, it found the error to be harmless:

{¶28} "When a trial court erroneously fails to suppress the results of field sobriety tests, if ample evidence exists to support the arrest and conviction, this error is harmless. *Village of Gates Mills v. Mace,* 8th Dist. No. 84826, 2005-Ohio-2191, at ¶ 29. The following factors have been held to be indications that established probable cause for the arrest and conviction of a person for DUI: erratic driving, driving left of center at least three times, stopping at an intersection for a prolonged period of time, smell of alcoholic beverage on the person or breath, failure to notice police car flashers, slurred speech, bloodshot eyes, and impairment of physical abilities. See *State v. Flowers,* 7th Dist. No. 07-MA-68, 2007-Ohio-6920.

{¶29} "In addition to the results of the field sobriety tests, Officer Reinhart also testified to the following indicators to demonstrate that appellant was under the influence of alcohol. Appellant was observed driving over the yellow line three times. Appellant stopped and stayed at a flashing yellow light intersection for at least 30 seconds, a prolonged amount of time, and did not notice that the officer's flashers were engaged until after he turned on his sirens. Appellant smelled of alcohol, was unsteady when he exited his vehicle, had slurred speech, and had bloodshot eyes. Appellant also admitted to drinking three beers. Thus, even without the sobriety tests, there was sufficient evidence to demonstrate that there was probable cause to stop and to convict appellant of operating a vehicle while under the influence of an alcoholic beverage. Therefore, the trial court's error in denying appellant's motion to suppress the sobriety tests was harmless.

{¶30} "Accordingly, although appellant's second assignment of error is well-taken, it does not constitute reversible error." *State v. Matus*, 6th Dist. No. WD-06-072, 2008-Ohio-377, ¶¶27-29.

{¶31} In this case, there were other factors, aside from the results of the HGN test, which provided a sufficient basis for probable cause to arrest Phillips for O.V.I. First, Trooper Herink indicated that Phillips drove left of center by a tire width on two occasions. Trooper Herink characterized the left of center offenses as driving over the center line then jerking back. It was not a smooth action or one consistent with just cutting a corner close or avoiding something in the roadway. Second, he drove off the right side of the roadway twice. Third, he smelled of alcohol. And fourth, he admitted to drinking.

{¶32} As for the HGN test, Trooper Herink's observations pertaining to that test were admitted solely for the purpose of the probable cause determination and were not going to be admitted at trial. Concerning Phillips' Bell's Palsy condition, he offered no testimony that he even had the condition or how it could have affected the field sobriety test or Trooper Herink's observations.

{¶33} Accordingly, Phillips' first and second assignments of error are without merit based on the nonspecificity of Phillips' suppression motion. That issue aside, even if Phillips' first and second assignments of error had any merit, the error was harmless.

### BREATH TEST RESULTS

{¶34} Phillips' third assignment of error states:

{¶35} "THE ADMISSION OF BREATH TEST RESULTS WITHOUT EVIDENCE OF PROPER REFRIGERATION OF THE CALIBRATION SOLUTION DOES NOT CONSTITUTE SUBSTANTIAL COMPLIANCE WITH OHIO HEALTH DEPARTMENT RULES AND REGULATIONS AND MUST BE SUPPRESSED."

{¶36} Under this assignment of error, Phillips raises what he terms as "quality control" issues concerning the storage of the calibration solution. Specifically, he points to lack of evidence concerning inspection, temperature controls, access by

others, whether other items such as food and drinks were stored with the solution, and backup supply of electric in the event of a power outage.

**{¶37}** However, Phillips was not as specific in his motion to suppress. This again raises the issue of whether the suppression motion set forth a sufficient legal and factual basis to challenge the breath test results. The section of Phillips' motion to suppress the breath test results read:

**{¶38}** "**BRANCH THREE:**

**{¶39}** "For an order suppressing the BAC Data Master results on the grounds that such tests was [sic] not performed in accordance with the rules and regulations of the Department of health [sic].

**{¶40}** "**GROUNDS:**

**{¶41}** "Specifically, defendant asserts that compliance was not made with regard to the following specific rules and regulations:

**{¶42}** "a)  Defendant was not observed by the testing officer continuously for 20 minutes immediately prior to said test. Further, the test was not performed within 2 hours of operation or physical control of a motor vehicle by the defendant.

**{¶43}** "b)  That RFI testing and site examination was not properly conducted as required by law.

**{¶44}** "c)   That calibration sample procedures and regulations of the Department of Health. [sic]

**{¶45}** "d)  That the health testing devise [sic] was not properly calibrated and protected against RFI interference."

**{¶46}** Upon review, it does not seem that Phillips' motion was sufficiently specific enough to raise a challenge regarding the refrigeration of the calibration solution. Subsection c is the only part of the motion that could be generously construed as addressing the storage of the calibration solution. It is not even a complete sentence. And it makes no reference to the Administrative Code section(s) that Phillips believes were not complied with. It certainly makes no reference to the refrigeration of the calibration solution. In sum, the motion did not set forth a sufficient

legal and factual basis to challenge the breath test results and that would have reason enough for the trial court to overrule that aspect of it.

**{¶47}** Again, even assuming Phillips had set forth a sufficient legal and factual basis to challenge the breath test results, his claim would still fail. This court recently rejected this same argument in *State v. Calder*, 7th Dist. No. 08 MO 5, 2009-Ohio-3329:

**{¶48}** "The Ohio Administrative Code dictates that calibration solutions must be kept under refrigeration after the first use and must be kept under refrigeration when not in use. At the time of the offense the Code read:

**{¶49}** "'Calibration solutions shall be kept under refrigeration after first use, when not being used. The calibration solution container shall be retained until the calibration solution is discarded.' Ohio Adm.Code 3701-53-04(C). * * *

**{¶50}** "The Third Appellate District has explained that the refrigeration requirement puts only a 'fairly slight' burden on the state to show substantial compliance with this section and it could be satisfied with minimal testimony on refrigeration. *State v. Yeaples,* 3d Dist. No. 13-08-14, 2009-Ohio-184, ¶35, citing *State v. Johnson* (2000), 137 Ohio App.3d 847, *State v. Bissaillon,* 2d Dist. No. 06CA130, 2007-Ohio-2349, and *State v. Kerr,* 6th Dist. No. H-02-028, 2002-Ohio-6358. See, also, *State v. Washington* (2000), 137 Ohio App.3d 847, 854. At the suppression hearing, officers testified that after first use, when the solution was not in use, it was refrigerated. (Tr. 63, 87). This testimony was sufficient to show substantial compliance with the Ohio Administrative Code.

**{¶51}** "Moreover, the 'quality control' arguments about temperature, a back up power supply, and other uses for the refrigerator fail. This is because the Ohio Administrative Code does not set forth any of these requirements. Instead, it merely requires refrigeration after initial use. As there is nothing else set out in the code about any quality control requirements for refrigeration, we cannot find that they should exist or what they are; the ODH is in the best position to set forth those requirements.

**{¶52}** "Our decision is supported by persuasive authority from our sister district. The Eleventh Appellate District was faced with an argument similar to the one made to us about the temperature of the refrigerator. It found the argument to be meritless and explained:

**{¶53}** "'While we agree with appellant that there was nothing in the record to indicate the exact temperature at which the calibration solution was stored, this is of no consequence. Ohio Adm.Code 3701-53-04 does *not* set forth a particular temperature range to store the solution. Rather, the regulation merely provides that the solution be kept refrigerated after first use.' *State v. McCardel* (Sept. 28, 2001), 11th Dist. No.2000-P-0092 (internal citations omitted).

**{¶54}** "Therefore, considering the above cited cases and the testimony, there was substantial compliance and no basis for the suppression of the results of the BAC DataMaster breath test on the basis of the refrigeration of the calibration solution. This assignment of error lacks merit." (Footnote omitted.) Id. at ¶50-56.

**{¶55}** In this case, the parties stipulated to the admission of testimony and evidence on the refrigeration issue adduced in *Calder*. (Tr. 47-50.) Therefore, based on this court's resolution of the refrigeration issue in *Calder*, Phillips' third assignment is without merit.

**{¶56}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, J., concurs.