[Cite as *State v. Bish*, 191 Ohio App.3d 661, 2010-Ohio-6604.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| THE STATE OF OHIO/ CITY OF YOUNGSTOWN, | ) ) ) | CASE NO.  09 MA 145 |
| APPELLANT, | ) ) | |
| - V - | ) ) | OPINION |
| BISH, | ) ) | |
| APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:      Criminal Appeal from Youngstown
                               Municipal Court, Case No. 09TRC655.


JUDGMENT:                       Reversed and Remanded.


APPEARANCES:

Joseph R. Macejko, Youngstown Prosecuting Attorney, and John H. Marsh Jr.,
Assistant Prosecuting Attorney, for appellant.



JUDGES:

Hon. Mary DeGenaro
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

                               Dated: December 29, 2010

DeGenaro, Judge.

{¶ 1}  This timely appeal comes for consideration upon the record in the trial court and appellant's brief.  Plaintiff-appellant, the state of Ohio, appeals the August 11, 2009 decision of the Youngstown Municipal Court that suppressed the results of field sobriety and breathalyzer tests in the context of an operating-the-vehicle-under-the-influence ("OVI") case against defendant-appellee, Julie Bish.  On appeal, the state argues that contrary to the trial court's ruling, it met its burden in establishing substantial compliance with the regulations pertaining to the breathalyzer test, even though it provided no testimony citing by name or number any Administrative Code sections.  The state also contends that it met its burden of establishing substantial compliance with the regulations pertaining to the standardized field sobriety tests even though the trooper did not cite the National Highway Traffic Safety Administration ("NHTSA") manual or the like during the suppression hearing, nor did the state introduce the NHTSA manual as evidence.  For these reasons, the state contends that the trial court erred by suppressing the results of the field sobriety tests and the breathalyzer test.

{¶ 2}  Upon review, we conclude that the trial court correctly suppressed the results of the field sobriety tests because there was no evidence presented regarding NHTSA or other credible, reliable field sobriety testing standards.  The trial court incorrectly suppressed the breathalyzer test because the state was not required to produce evidence of the applicable administrative code sections and because even absent the results of the field sobriety tests, there was probable cause to arrest Bish and have her submit to the breathalyzer.  Accordingly, the judgment of the trial court is

reversed, and the cause is remanded for further proceedings.

**Facts and Procedural History**

{¶ 3} At approximately 1:48 a.m. on February 28, 2009, Bish was traveling west on Mahoning Avenue in Youngstown, Ohio. Trooper Vic Wolfe of the Ohio State Highway Patrol was traveling the opposite direction on Mahoning Avenue and observed Bish accelerate to make it through a yellow light. He visually estimated Bish's speed as 43 m.p.h. in a 35 m.p.h. zone, an estimate that he confirmed by radar. The trooper then turned around to follow Bish's vehicle so he could observe her more closely. He then saw Bish make a right turn on red after coming to a complete stop, but without using her turn signal. At that point, the trooper activated his lights and initiated a traffic stop. The trooper said he observed that Bish had bloodshot, glassy eyes and noticed a moderate odor of alcohol. He asked her to produce her license, insurance, and registration, which she did in a slow and delayed manner. The trooper then asked Bish to exit her vehicle, and the trooper observed her reaction to be somewhat "slow and delayed." He testified that acting in a slow and delayed manner was indicative of alcohol impairment.

{¶ 4} Based on his observations, the trooper instructed Bish to perform three standardized field sobriety tests: the horizontal gaze nystagmus ("HGN"), the walk and turn, and the one-leg stand. According to the trooper, Bish failed all three tests. At some point during the stop, the trooper asked Bish whether she had consumed alcohol that evening, and Bish admitted drinking two to three beers since she had finished work at midnight. Based on his observations and Bish's poor performance on the field sobriety tests, the trooper placed Bish under arrest for OVI and transported her to the

patrol post, where he administered the breath-alcohol concentration ("BAC") Datamaster test. This breathalyzer measured Bish's breath-alcohol content as 0.122, which is over the legal limit.

{¶ 5} Bish was charged with OVI in violation of R.C. 4511.19(A)(1)(a); operating a vehicle with a prohibited BAC in violation of R.C. 4511.19(A)(1)(d); and with a turn-signal violation pursuant to R.C. 4511.39.

{¶ 6} Bish filed a motion to suppress the evidence seized as a result of the traffic stop, the field sobriety tests, the arrest, and the breathalyzer test. In support of her motion, Bish argued that the trooper did not have reasonable, articulable suspicion to stop her and to perform standardized field sobriety testing. Furthermore, Bish argued that the trooper failed to administer the field sobriety tests in substantial compliance with the proper procedures and therefore lacked probable cause to arrest her. Finally, Bish argued that the breathalyzer test was not performed in substantial compliance with the applicable Ohio Administrative Code provisions. To that end, Bish listed 22 alleged grounds to suppress the evidence.

{¶ 7} At the evidentiary hearing, Bish withdrew 11 of the challenge grounds listed in her suppression motion at the beginning of the hearing based on discovery provided by the state. Troopers Eric Brown and Vic Wolfe testified. At the close of the hearing, defense counsel argued that the state had failed to produce evidence of the applicable standards for the field sobriety tests and the breathalyzer test. The trial court permitted defense counsel to file post-hearing supplemental authority relating to this issue.

{¶ 8} The state filed a motion to reopen the suppression hearing for additional testimony, which was opposed by Bish. After hearing arguments of counsel, the trial court denied the motion. In an August 11, 2009 judgment entry, the trial court granted Bish's suppression motion. The trial court's reasons for granting the suppression motion were that the state had presented no evidence as to the applicable standards for the breathalyzer and field sobriety tests or whether the troopers had substantially complied with them. Accordingly, the trial court suppressed the results of both the field sobriety tests and the breathalyzer test.

{¶ 9} The state filed a timely notice of appeal that was accompanied by a certification pursuant to Crim.R. 12(K). Although Bish's retained counsel initially filed a motion for leave to file an appellee's brief, counsel subsequently filed a motion to withdraw, stating he had been unable to locate and communicate with Bish for a significant period of time and was therefore unable to effectively represent her interest in this matter. This court granted counsel's motion to withdraw and granted Bish time to advise this court as to her substitute counsel. Bish has failed to file a brief in this matter; thus, this court may accept the state's statement of the facts and issues as correct and reverse the trial court's judgment if the state's brief reasonably appears to sustain such action. See App.R. 18(C).

**Standard of Review**

{¶ 10} Both of the state's assignments of error challenge the trial court's ruling on the motion to suppress. Appellate review of a motion to suppress presents a mixed question of law and fact. *State v. McNamara* (1997), 124 Ohio App.3d 706, 710, 707

N.E.2d 539. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972. Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, at ¶ 8. Accepting these facts as true, the appellate court conducts a de novo review of whether the facts satisfy the applicable legal standards at issue in the appeal. Id.

### Field Sobriety Tests

{¶ 11} For ease of analysis, the state's two assignments of error will be addressed out of order, the second of which asserts:

{¶ 12} "The trial court committed error in suppressing the results of the field sobriety test."

{¶ 13} As aforementioned, the trooper had Bish perform three standardized field sobriety tests: the HGN, the walk and turn, and the one-leg-stand. According to the trooper, Bish failed all three. The trial court suppressed the results of all three tests because the state adduced no testimony or other evidence about standards used to administer the field sobriety tests. The state contends that this ruling was erroneous.

{¶ 14} The Ohio Supreme Court has recognized that since the amendment of R.C. 4511.19 by the Ohio legislature in 2003, field sobriety tests need not be conducted in strict compliance with standardized testing procedures. *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, at ¶ 9. "Instead, an officer may now testify

concerning the results of a field sobriety test administered in substantial compliance with the testing standards."  Id.

{¶ 15} R.C. 4511.19(D)(4)(b) provides that evidence and testimony regarding the results of a field sobriety test may be presented "if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration."

{¶ 16} As a threshold matter, the state argues that Bish's allegations in her suppression motion regarding the field sobriety tests were not specific and therefore required the state only to present general testimony to demonstrate substantial compliance.  This court has previously held that in order to shift the burden to the state to prove substantial compliance, a defendant's suppression motion must state the grounds for suppression with both specificity and particularity.  See, e.g., *State v. Phillips*, 7th Dist. No. 08-MO-6, 2010-Ohio-1547; *State v. Kale*, 7th Dist. No. 08-CO-47, 2009-Ohio-6530.

{¶ 17} In *Phillips*, the defendant raised only the very general argument that the field sobriety tests were not performed in substantial compliance with the NHTSA regulations, with no further elaboration and without pointing to facts that occurred during the tests or to instructions that the defendant believed did not comply with the standards.  This court accordingly held that the suppression motion was not specific

enough to shift the burden to the state to demonstrate compliance with the applicable standards. *Phillips* at ¶ 17-20, following *State v. Arnold*, 7th Dist. No. 05-CO-60, 2006-Ohio-5228, at ¶ 12 ("Appellant failed to allege facts in his motion as to how * * * [the officer] instructed him to perform the tests and how they did not comply with NHTSA standards. For this reason, the trial court did not err in denying appellant's motion to suppress the results of his field sobriety tests"); and *State v. Gozdan*, 7th Dist. No. 03 CA 792, 2004-Ohio-3209, at ¶ 10 ("merely stating that * * * [the field sobriety test] was not performed in strict compliance provides no factual basis to support the allegation").

{¶ 18} In *Kale*, the defendant took what this court termed a "throw-everything-at-the-wall-and-see-what-sticks" approach, listing many grounds in a boilerplate fashion, without linking those grounds to any particular facts in the case. *Kale,* 2009-Ohio-6530, at ¶ 18. This court found that this approach also does not shift the burden to the state to demonstrate substantial compliance. Id.

{¶ 19} Here, it appears that counsel has a template that is used for motions to suppress. The motion itself seeks to suppress:

{¶ 20} "1. Tests of defendant's coordination and/or sobriety and/or drug level, including but not limited to chemical tests of Defendant's alcohol and/or drug level. 2. Statements taken from or made by the Defendant. [3.] The results of all tests administered to determine a level of alcohol." The motion then goes on to list 22 grounds that the state must address to show why the evidence should not be suppressed. The motion is unsigned, and item numbers 2, 3, 4, 9, 11, 12, 14, 15, 17, 19 and 20 have been struck through. The attached memorandum in support of the motion

identifies a defendant other than Bish in the heading. On the day of the hearing, Bish withdrew 11 of the 22 grounds upon which she was basing her suppression motion. Although at first it appears that the motion is the "throw everything at the wall" type cautioned against in *Kale*, it still appears that Bish stated her grounds to suppress the field sobriety tests with sufficient specificity and particularity so as to shift the burden of proof to the state. With regard to the HGN test, her motion states:

**{¶ 21}** "The HGN was not done within the proper time elements provided for in the N.H.T.S.A. manual. The trooper did not grade the test properly as required by the NHTSA manual. The trooper did not perform all the medical checks required to conduct this test. During distinct nystagmus, the trooper did not observe the nystagmus for the specified period to endure that it was distinct and sustained. During the onset prior to 45 degree test the trooper did not stop when nystagmus was allegedly observed and verify its existence. The trooper did not perform any of the HGN tests the number of times required by the manual. The State is required to demonstrate substantial compliance for the outcome of the tests to be used to establish probable cause."

**{¶ 22}** With regard to the one-leg stand and the walk-and-turn test, Bish specifically alleged in her suppression motion:

**{¶ 23}** "On the One Leg Stand and Walk and Turn portion of the test there is no evidence that the trooper provided all of the required instructions or that the tests were administered on a dry, level and non-slippery surface. There is also no evidence that the trooper graded the test properly. The trooper failed to ask Ms. Bish if she understood the instructions. As a result, Ms. Bish had to ask the trooper how she was

supposed to turn. The trooper failed to give her the proper instruction at that time, yet marked as a clue that she did not turn properly. The conditions were not condusive [sic] to the performance of this test and as a result, the test could not have been administered in substantial compliance with the NTSA [sic] Manual. The trooper failed to instruct Ms. Bish where she should be looking during the test. The Defense has not been provided any evidence in discovery to demonstrate the trooper's training and qualifications as well as if any of the tests were conducted and graded in substantial compliance with the NHTSA standards that were in effect that date. The same arguments apply to the Walk & Turn test."

{¶ 24} Because Bish alleged specific facts in her motion about noncompliance with the field sobriety tests, the burden shifts to the state to prove substantial compliance with the applicable standards. Typically such standards originate from the NHTSA manual; however, the statute itself does not specify that the NHTSA must be used. R.C. 4511.19(D)(4)(b). Rather, "testing standards *include*, *but are specifically not limited to* the NHTSA guidelines." (Emphasis added.) *State v. Sunday*, 9th Dist. No. 22917, 2006-Ohio-2984, at ¶ 21, citing R.C. 4511.19(D)(4)(b). Therefore, the court in *Sunday* emphasized it was "careful not to extol the NHTSA guidelines as the sole 'reliable, credible, and generally accepted field sobriety test.' " Id.

{¶ 25} Other appellate districts that have addressed this issue have held that if no evidence of a reliable field sobriety testing standard is produced at the suppression hearing, either via testimony or introduction of the applicable manual, the state does not meet its burden of demonstrating compliance. See *State v. Broom*, 2d Dist. No. 22468,

2008-Ohio-5160, at ¶ 12; *State v. Perkins*, 10th Dist. No. 07AP-924, 2008-Ohio-5060, at ¶ 16; *State v. Brown*, 166 Ohio App.3d 638, 2006-Ohio-1172, 852 N.E.2d 1228, at ¶ 23 (Eleventh District); *State v. Sunday*, 2006-Ohio-2984, at ¶ 22-25 (Ninth District); *Gates Mills v. Mace*, 8th Dist. No. 84826, 2005-Ohio-2191, at ¶ 24-26; *State v. Ryan*, 5th Dist. No. 02-CA-00095, 2003-Ohio-2803, at ¶ 21; *State v. Nickelson* (July 21, 2001), 6th Dist. No. H-00-036 at *4.

{¶ 26} Moreover, this court stated recently that where there was no testimony that an HGN test was performed in compliance with NHTSA or a comparable manual test, and the state did not offer anything to show that it had been performed in substantial compliance or standards were followed, that the defendant "may" have had a basis for suppressing. *Phillips*, 2010-Ohio-1547, at ¶ 23. Ultimately, in *Phillips,* this court held any error harmless because there was ample evidence aside from the field sobriety test results demonstrating probable cause, namely driving left of center three times, driving off the roadway twice, smelling of alcohol, and admitting to consuming alcohol. Id. at ¶ 31.

{¶ 27} Now given the opportunity to address the issue directly, we follow our sister districts and hold that some evidence of the NHTSA or other testing standards is required. It is only logical that in order to prove substantial compliance with a given standard, there must be at minimum some evidence of the applicable standard for comparative purposes. Accordingly, where the suppression motion raises specific challenges to the field sobriety tests, the state must produce some evidence of the testing standards, be it through testimony or via introduction of the NHTSA or other

similar manual or both.

{¶ 28} Applying that test to the instant case, the state fell short of these requirements. Trooper Wolfe testified about how he performed the various field sobriety tests and opined that Bish failed them. However, the trooper never testified about the NHTSA standards or any other credible, reliable field sobriety testing standard. Nor did the state introduce the NHTSA manual or the like as an exhibit at trial. Testimony about *how* the trooper performed the field sobriety tests presents only half the picture. It is impossible to tell from the evidence presented during the suppression hearing whether the trooper administered the field sobriety tests in substantial compliance with the NHTSA or any other set of standards as required by R.C. 4511.19(D)(4)(b).

{¶ 29} During the hearing on the motion to reopen the suppression hearing, the state essentially argued that no specific testimony about the field sobriety testing standards was required since the court was familiar with the NHTSA standards from other cases. The state presents a similar argument on appeal, arguing that because the requirements for field sobriety tests are so well known that introduction of the NHTSA manual or testimony is unnecessary, citing *Gozdan*, 2004-Ohio-3209, in support of this argument. In *Gozdan*, this court did state that "[t]he requirements for the field sobriety tests are well known." However, that statement was made in the context of a discussion about the defendant's burden to state specific grounds for suppressing field sobriety test results in his motion. Id. at ¶ 10. However, the ultimate holding in *Gozdan* was the following: "[T]he mere allegation that the tests were not administered in strict compliance with the NHTSA standards did not mandate the trial court to hold a hearing

on the suppression motion. The trial court did not abuse its discretion in failing to hold a hearing on the motion to suppress the field sobriety tests." Id. at ¶ 10. Thus, *Gozdan* does not support this argument.

{¶ 30} Further, whether the field sobriety testing standards are well known does not appear to change the outcome in the present case. The state never elicited testimony about which standards were used. In fact, the NHTSA itself was never even mentioned until the state's closing argument, which itself does not constitute evidence. See, e.g., *State v. Riester*, 11th Dist. No. 2005-L-061, 2006-Ohio-3771, at ¶ 18.

{¶ 31} In sum, in cases where the suppression motion alleges specific facts about the noncompliance with field sobriety test standards, the state is required to come forward with at least some evidence of what the standards were. Here, there was a dearth of evidence presented about the standards; the state introduced no exhibits or testimony on this issue. For this reason, the trial court properly suppressed the results of the field sobriety tests. Accordingly, the state's second assignment of error is meritless.

### Breathalyzer

{¶ 32} In its first assignment of error, the state asserts:

{¶ 33} "The trial court committed error in suppressing the results of the breathalyzer test."

{¶ 34} The state contends that the trial court erred by suppressing the results of the breathalyzer test. The trooper administered the breathalyzer to Bish at the highway patrol post after she failed the field sobriety tests and after he placed her under arrest.

It is undisputed that Bish's suppression motion raised ten distinct challenges to the breathalyzer test and elaborated on the factual basis for some of those challenges in her memorandum in support of her motion to suppress.

{¶ 35} Specifically, Bish alleged the following: (1) the individual administering the breathalyzer did not comply with the operator's checklist instructions issued by the Ohio Department of Health ("ODH") included in the appendices to Ohio Adm.Code 3701-53-04; (2) the testing agency did not retain the results of all tests administered, including the operational checklists, for the past three years as required by Ohio Adm.Code 3701-53-01; (3) the testing agency did not have at least one copy of the written procedure manual, or an operational manual provided by the manufacturer, as required by Ohio Adm.Code 3701-53-06(D), on file where the tests are performed as required by Ohio Adm.Code 3701-53-01; (4) the breath-testing instrument was not properly tested to determine radio-frequency interference every seven days, as required by Ohio Adm.Code 3701-53-04, by a senior operator utilizing a hand-held radio regularly used by law enforcement as required by Ohio Adm.Code 3701-53-04(A)(1); (5) the solution used to calibrate the testing instrument was invalid and not properly maintained in accordance with Ohio Adm.Code 3701-53-04. The calibration-solution container was not retained properly. The instrument-check solution was not kept under refrigeration while it was not being used; (6) the instrument was not properly checked following its return from service, maintenance, or repairs as required by Ohio Adm.Code 3701-53-04(B); (7) the person or persons calibrating the instrument analyzing Bish's alcohol level were not currently licensed senior operators to calibrate the instrument in accordance

with Ohio Adm.Code 3701-53-08(C) and 3701-53-09. In particular, Bish alleged that the calibration checks in this case were not performed by an officer who had successfully completed a basic senior operator, upgrade, or conversion course for the type of approved evidential breath-testing instrument for which they sought a permit; (8) results of all instrument checks, and records of maintenance and repairs, were not properly retained as required by the Ohio Administrative Code; (9) the testing officer was not subject to a survey and proficiency examination by representatives of the Director of Health as required by Ohio Adm.Code 3701-53-08, and the testing officer did not complete a proficiency exam with a representative of the director of the Department of Health, in person; and (10) the officer who administered the test and the officers who calibrated the machine prior to and following the defendant's test do not hold proper permits to operate the model of Datamaster used to obtain this test as mandated by Ohio Adm.Code 3701-53-08(B).

{¶ 36} In light of these specific challenges, the burden shifted to the state to demonstrate substantial compliance with the ODH regulations. *Defiance v. Kretz* (1991), 60 Ohio St.3d 1, 3, 573 N.E.2d 32. See also R.C. 4511.19(D) ("The bodily substance withdrawn under division (D)(1)(b) of this section shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director pursuant to section 3701.143 of the Revised Code").

{¶ 37} R.C. 3701.143 provides:

{¶ 38} "For purposes of sections * * * 4511.19 * * * of the Revised Code, the

director of health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath, or other bodily substance in order to ascertain the amount of alcohol * * * in the person's * * *breath[.] * * * The director shall approve satisfactory techniques or methods, ascertain the qualifications of individuals to conduct such analyses, and issue permits to qualified persons authorizing them to perform such analyses. Such permits shall be subject to termination or revocation at the discretion of the director."

{¶ 39} The ODH regulations authorized by R.C. 3701.143 pertaining to breathalyzer tests are found in the Ohio Administrative Code. See Ohio Adm.Code 3701-53-01 et seq.

{¶ 40} Here, the trial court appeared to suppress the results of the breathalyzer for the same reason it suppressed the field sobriety tests — i.e., lack of testimony citing the ODH regulations or other evidence of those regulations. Specifically, the court stated:

{¶ 41} "[I]t is inappropriate for the court to take judicial notice of the standards contained in the manual or any other administrative code sections, for that matter. * * * [The troopers] may have been trained pursuant to other administrative codes or administered the tests pursuant to other codes. Or, they may not have administered the [breathalyzer] test[ ] in substantial compliance with any administrative codes. * * * Accordingly, since no testimony was presented to show what the applicable standards were or whether the troopers substantially complied with them, the result[ ] of * * * the breathalyzer test [is] suppressed."

**{¶ 42}** The state contends that this ruling was erroneous because the breathalyzer standards are promulgated in the Ohio Administrative Code, meaning no evidence of them is required. Rather, the state argues that the Ohio Administrative Code provisions are simply the law in Ohio. We agree. While, as discussed in the context of the second assignment of error above, there are numerous cases holding that some evidence of the standards used for field sobriety tests is required, there appear to be no cases holding that it is necessary to introduce evidence of the Administrative Code sections pertaining to the breathalyzer test. The cases cited by the trial court in its opinion all relate to the State's burden to produce some evidence about the standards used for the *field sobriety tests*, not for the administration of the breathalyzer test. See *Broom*, 2008-Ohio-5160; *Sunday*, 2006-Ohio-2984; *Mace*, 2005-Ohio-2191; *State v. Duncan*, 11th Dist. No. 2004-L-065, 2005-Ohio-7061.

**{¶ 43}** As indicated, the standards relating to the breathalyzer are ODH regulations found in the Administrative Code itself. Ohio Adm.Code 3701-53-01 et seq. "An Ohio Administrative Code section is a further arm, extension, or explanation of statutory intent implementing a statute passed by the General Assembly. It has the force and effect of a statute itself." *State ex rel. Meyers v. Ohio State Lottery Comm.* (1986), 34 Ohio App.3d 232, 234, 517 N.E.2d 1029.

**{¶ 44}** By contrast, the standards for the field sobriety tests can come from NHTSA or some other reliable manual for standardized testing, none of which are included specifically in the Ohio Administrative Code. The NHTSA could perhaps be best characterized as an "official publication." *State v. Frakes*, 5th Dist. No. 07CA0013,

2008-Ohio-4204, at ¶ 44-47. However, the NHTSA manual does not carry the force of law as the Administrative Code does. Consequently, while it appears that the state must produce some evidence of the field sobriety testing standards, it need not produce evidence of the ODH regulations pertaining to the breathalyzer as those contained in the Administrative Code. It appears the state is correct that an inquiry into the relevant Administrative Code provisions is a matter of law properly for the trial court to examine.

{¶ 45} Moreover, although they did not specify the Administrative Code sections by name or section number, the troopers did discuss at length the requirements contained therein and how they substantially complied with them. Trooper's Brown and Wolfe both testified how they were certified by ODH to operate the BAC DataMaster breathalyzer machine. Trooper Brown described the BAC DataMaster instrument check form as "a form prescribed by the Ohio Department of Health weekly when the machine is calibrated." Further, the state introduced as exhibits numerous documents relating to the administration of the breathalyzer, many of which contain the applicable Administrative Code sections listed thereon. For all these reasons, the trial court erred in its determination that a lack of testimony citing specific code provisions required suppression of the breathalyzer-test results.

{¶ 46} Because we have concluded that the trial court correctly suppressed the field sobriety test results but erred by suppressing the BAC results, we must determine whether there is enough additional evidence of impairment to establish probable cause to arrest Bish and have her submit to the breathalyzer test.

{¶ 47} The standard for determining whether there was probable cause to arrest

for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. *State v. Homan* (2000), 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (superseded by statute on other grounds as stated in R.C. 4511.19(D)(4)(b)). That determination is based on the totality of the facts and circumstances surrounding the arrest. Id. Even if the results of field sobriety tests are suppressed, the officer's observations of the suspect while performing those tests can be considered when evaluating probable cause. See *State v. Cunningham*, 7th Dist. No. 08 MO 8, 2009-Ohio-4394, at ¶ 24, citing *State v. Schmitt*, 101 Ohio St.3d 79, 2004-Ohio-37, 801 N.E.2d 446, ¶ 14-15; *State v. Johnson*, 7th Dist. No. 05 CO 67, 2007-Ohio-602, at ¶ 25 (even if final result should be suppressed, officer's observations of motions during test are evidence court can consider in probable-cause evaluation and are not subject to statutory substantial-compliance test). Whether or not there was probable cause is a legal issue that is reviewed de novo. See *State v. Salas*, 9th Dist. No. 21891, 2004-Ohio-6274, at ¶ 17.

**{¶ 48}** Although each case is decided on its unique facts and circumstances, a discussion of cases where probable cause was at issue is instructive. For example, in *State v. Flowers*, 7th Dist. No. 07-MA-68, 2007-Ohio-6920, this court held there was probable cause to arrest for OVI where the defendant drove left of center three times, stopped at an intersection for a prolonged period of time, took a prolonged period of time to pull over, smelled of alcohol, had "really slurred" speech, had bloodshot eyes, and admitted consuming four beers. Id. at ¶ 16-19. In *State v. Calder*, 7th Dist. No. 08

MO 5, 2009-Ohio-3329, this court held that there was probable cause to arrest for OVI where the defendant drove through a parking spot and over a curb, smelled strongly of alcohol, had glassy, bloodshot eyes, slurred his speech, admitted having a couple beers, and was stopped at 2:30 a.m. on New Year's Day. Id. at ¶ 41-42.

{¶ 49} In *Cunningham*, 2009-Ohio-4394, this court held there was probable cause to arrest for OVI where the defendant had kicked over a beer on his way out of the vehicle; smelled strongly of alcohol; had bloodshot eyes; stared through the windshield while talking so as to avoid the officer's gaze; fumbled through papers, passing the registration by and providing a title instead; failed to touch heel to toe during the walk-and-turn test even one time in 18 steps, even though he had been instructed to do so and the officer had demonstrated the proper walking technique; and when on the one-leg stand test, the defendant could keep his right leg up for only five seconds and his left leg up for six seconds. Id. at ¶ 23-24.

{¶ 50} In all these cases, this court performed the probable-cause analysis assuming that the results of the field sobriety tests were excluded. Likewise in *Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952, the Ohio Supreme Court, after concluding that the results of the field sobriety tests should have been suppressed, concluded there was probable cause where the defendant was driving erratically, had red and glassy eyes, smelled of alcohol, and admitted consuming alcoholic beverages.

{¶ 51} In this case, Bish was observed committing two moving violations: driving 43 m.p.h. in a 35 m.p.h. zone and failing to use her turn signal at 1:43 a.m. Notably, Bish conceded at the hearing that the failure to use her turn signal was reasonable

suspicion to support the traffic stop. The trooper said that Bish's responses to his instructions to produce her documents and to exit the vehicle were slow and delayed and that alcohol consumption slows motor movement and delays reaction. The trooper further testified that Bish's eyes were bloodshot and glassy, that there was a moderate odor of alcohol about her, and that Bish admitted consuming two to three beers in approximately two hours.

{¶ 52} Further, the trooper's observations of Bish as she performed the field sobriety tests are admissible to show probable cause even if the results of the tests are suppressed. See *Cunningham*, 2009-Ohio-4394, at ¶ 24. Here, the trooper testified that Bish swayed before and during the one-leg stand test and put her foot down three times, which could indicate poor balance and therefore impairment. The trooper also testified that Bish had raised her hands "inches" during the walk and turn. The trooper also testified that Bish had "lost her balance" during the test. Thus, based upon the totality of the circumstances, the trooper had probable cause to arrest Bish and have her submit to the breathalyzer. For all these reasons, the state's first assignment of error is meritorious.

{¶ 53} In conclusion, the trial court properly suppressed the results of the field sobriety tests because the state failed to present any evidence regarding the applicable standards for performing those tests. The court incorrectly suppressed the results of the breathalyzer test, because the state was not required to introduce evidence of the specific Administrative Code sections. And even absent the results of the field sobriety tests, based upon the totality of the circumstances, the trooper had probable cause to

arrest Bish and have her submit to the breathalyzer. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings.

Judgment reversed
and cause remanded.

VUKOVICH, P.J., concurs.

WAITE, J., concurs in judgment only.