[Cite as *State v. Raybould* , 2019-Ohio-3057.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2018-P-0085** |
| DAVID J. RAYBOULD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Municipal Court, Ravenna Division, Case No. 2017 TRC 14950 R.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, *Pamela J. Holder,* Assistant Prosecutor, and *John Jared Smiley,* Assistant Prosecutor, 241 South Chestnut Street, Ravenna, Ohio 44266 (For Plaintiff-Appellee).

*Kevin J. Breen*, Kevin J. Breen Co., LLC, 3500 West Market Street, Suite 4, Akron, Ohio 44333 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1} Appellant, David J. Raybould, appeals his conviction for operating a vehicle under the influence. We affirm.

{¶2} Raybould was charged with speeding and operating a motor vehicle under the influence in violation of R.C. 4511.19(A)(1)(a) and (A)(1)(d). He initially pleaded not guilty and moved the court to suppress. The trial court overruled his motion, and

Raybould pleaded no contest to OVI in violation of R.C. 4511.19(A)(1)(a), driving under the influence, with the remaining charges dismissed. The trial court stayed his sentence pending appeal.

{¶3} Raybould raises two assigned errors:

{¶4} "[1.] The trial court erred in its August 31, 2018 judgment entry denying defendant's motion to suppress evidence.

{¶5} "[2.] The trial court erred in excluding from evidence the results of the portable breath test ('PBT') registering a BAC of 0.074."

{¶6} Raybould's first assigned error consists of two arguments. Raybould first argues that the trooper improperly administered the field sobriety tests, and consequently, the results should have been suppressed.

{¶7} "'Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * *Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

{¶8} To admit field sobriety test results, the state must show that the police administered the test in substantial compliance with standardized testing procedures. *Strongsville v. Troutman,* 8th Dist. Cuyahoga No. 88218, 2007-Ohio-1310, at ¶ 22, citing R.C. 4511.19.

**{¶9}** Only general testimony is required to establish substantial compliance with field sobriety tests unless a defendant raises a specific and particular challenge to a test. *State v. Bish*, 7th Dist. No. Mahoning 09 MA 145, 191 Ohio App.3d 661, 2010-Ohio-6604, 947 N.E.2d 257, ¶ 16. When presented with a specific challenge as grounds for suppression, the burden shifts to the state to prove substantial compliance. *Id.; State v. Holzapfel*, 2nd Dist. Darke No. 2013-CA-17, 2014-Ohio-4251, ¶ 11. And if there is insufficient evidence to support that a test was performed in substantial compliance with the applicable standards, suppression is warranted. *Id.* at ¶ 17.

**{¶10}** Here, Ohio Highway Patrol Trooper Loren Joshua Lee administered the field sobriety tests in a lighted school parking lot. On direct examination, Lee explained his training on the National Highway Traffic Safety Administration (NHTSA) manual and explained the procedure for each test that he administered to Raybould. He explained how Raybould performed on each. The state introduced the NHTSA manual as an exhibit. Based on the totality of the circumstances, Lee concluded that Raybould appeared under the influence of alcohol.

**{¶11}** On cross-examination, Raybould challenged the manner in which Lee administered the field sobriety tests as inconsistent with the NHTSA manual and attempted to undermine Lee as inexperienced because the stop occurred during his first 60 days as a trooper, and he was still under supervision.

**{¶12}** Lee described performing the horizontal gaze nystagmus (HGN) test consistent with the NHSTA manual and detailed that he held the stimulus 12 to 15 inches from Raybould's eyes and checked for resting nystagmus and equal pupil size. Lee next administered the equal tracking of the stimulus test and the lack of smooth pursuit portion of the test. And Raybould showed two clues on the lack of smooth pursuit portion, one

3

clue in each eye. Lee also detailed performing the distinct and sustained nystagmus at maximum deviation portion of the test and explained that Raybould had distinct and sustained nystagmus in both eyes or two clues. Lee then detailed performing the last portion of the test, nystagmus prior to a 45-degree angle, confirmed he instructed Raybould how to perform it, and confirmed that Raybold had two clues on this portion, one in each eye. Lee concluded that Raybould failed the HGN test explaining that six clues indicating intoxication were present for the HGN test. However, Raybould claims he told Lee at the stop that he was shot in the eye as a child, and as such, this negated his failing the HGN test.

{¶13} Contrary to Raybould's argument, Lee had no recollection of being told that Raybould had been shot in the eye. Instead, Lee recalled that Raybould told him a story about being shot, but not in the eye, and not until after the field tests were administered and Raybould was arrested. Raybould does not challenge the HGN test results on any other basis. Thus, absent a specific challenge to the manner in which the HGN test was administered, the results were admissible based on Lee's general testimony. *State v. Bish*, 7th Dist. No. Mahoning 09 MA 145, 191 Ohio App.3d 661, 2010-Ohio-6604, 947 N.E.2d 257, ¶ 17 (absent a specific challenge to compliance with NHTSA standards, the burden does not shift to the state to demonstrate compliance with the applicable standard). The trial court did not err in failing to suppress the HGN test results.

{¶14} Lee also administered the vertical gaze nystagmus test and observed no clues indicating intoxication.

{¶15} Lee testified that Raybould likewise failed the walk and turn and the one leg stand tests.

4

{¶16} Raybould also claims the state failed to show Lee substantially complied with the standards for the walk and turn test. However, his challenge to the walk and turn test, if any, is not discernible from the hearing transcript. And on appeal, Raybould appears to allege that Lee was unable to definitively state how many clues must be present to constitute a "failing" grade. A lack of knowledge as to what constitutes a failing test result, however, is not a specific challenge to Lee's administration of the test. Thus, the burden did not shift to the state to prove substantial compliance, and Lee's general testimony was sufficient. *State v. Holzapfel*, 2nd Dist. Darke No. 2013-CA-17, 2014-Ohio-4251, ¶ 11.

{¶17} Moreover, the hearing transcript confirms that Lee detailed conducting the walk and turn test by advising Raybould to walk nine heel-to-toe steps on an imaginary line while counting out each step and return in the same manner on the line. Lee advised Raybould how to perform the test, demonstrated it for him, and confirmed that he did so consistent with the NHTSA manual. Lee observed five clues, of a possible eight, on this test and explained that Raybould failed this test. The trial court did not err in failing to suppress the walk and turn test results.

{¶18} As for the one leg stand test, Lee detailed the instructions he gave Raybould for this test consistent with the NHTSA manual, and he confirmed that he understood the instructions. Lee observed three out of four possible clues on this test, including continued swaying and Raybould putting his foot down. Lee concluded that Raybould performed poorly on this test.

{¶19} Raybould contends that Lee was unable to explain how much swaying or moving from side to side is sufficient to constitute a clue of impairment, and as such, his failing the test was inadmissible to show impairment. Lee described Raybould as swaying

5

during this test, but Lee did not time the duration of Raybould's swaying. Nevertheless, Lee explained that a "continuance of swaying" is what occurred and that the NHTSA manual does not define the duration of swaying necessary to constitute "continuance of swaying."

{¶20} Raybould also claims Lee did not know how long Raybould was able to lift his leg. However, Lee explained that the NHTSA manual provides four clues of impairment to be observed during a 30-second time frame. And he explained that because Raybould put his foot down after 24 seconds, this was an observable clue of impairment. Upon considering the testimony and the NHTSA manual, the court concluded that Lee substantially complied with the applicable standards in administering the one leg stand test. We agree.

{¶21} Accordingly, Raybould's first argument under his first assigned error lacks merit.

{¶22} Second, he claims the totality of the circumstances did not support his arrest for driving under the influence. We disagree.

{¶23} The totality of the circumstances surrounding a stop can support a finding of probable cause to arrest even if field sobriety tests were not administered. *State v. Penix*, 11th Dist. Portage No. 2007-P-0086, 2008-Ohio-4050, ¶ 29. And whether there was probable cause to arrest is a legal issue that we review de novo. *Columbus v. Horton*, 10th Dist. Franklin No. 13AP-966, 2014-Ohio-4584, ¶ 13.

{¶24} Raybould was operating his vehicle in Portage County, Ohio at approximately two in the morning on a Saturday when he was pulled over by Lee.

{¶25} Lee was the only witness at the hearing. Lee testified that he had been a trooper for approximately 13 months when he was patrolling State Route 44 and began

6

pacing Raybould's vehicle for suspected speeding. Lee determined that Raybould was driving 54 miles per hour in a 45-mile-per-hour zone. Lee also observed Raybould's vehicle weaving within his lane of travel, which included driving on the fog line but not crossing it, for 30 seconds.

{¶26} Upon pulling Raybould over, Lee smelled alcohol. Raybould was alone in the vehicle and said he was coming from the Dusty Armadillo bar. Raybould had "bloodshot, glassy eyes and a strong odor of an alcoholic beverage coming from his person." Raybould told Lee he drank four beers that night and consumed the last one about an hour prior to the stop. He was also slurring his speech.

{¶27} Lee witnessed Raybould weaving at two in the morning. Lee observed an odor of alcohol emanating both from Raybould's vehicle and his person. He also testified that Raybould had been at the Dusty Armadillo, a bar. Further, Raybould's eyes were red and blood-shot, and he admitted to drinking four beers that night. *State v. Dwyer*, 11th Dist. Lake No. 2001-L-075, 2002-Ohio-710 (erratic driving in addition to defendant's blood-shot eyes, slurred speech, odor of alcohol, and defendant's admitted consumption of alcohol provides sufficient probable cause to arrest for OVI). Moreover, the field sobriety test results indicated that Raybould was impaired.

{¶28} Accordingly, Lee had probable cause to arrest Raybould for DUI, and the second aspect of his first assigned error lacks merit.

{¶29} Raybould's first assigned error is overruled.

{¶30} His second assigned error asserts that the trial court erred in not considering evidence of the portable breath test (PBT) results, which registered within the legal range, and that had the court considered the PBT, it would have found that Lee lacked probable cause to conduct the field sobriety tests. We disagree.

7

**{¶31}** "A request that a driver perform field sobriety tests 'must be separately justified by specific, articulable facts showing a reasonable basis for the request.' *State v. Evans* (1998), 127 Ohio App.3d 56, 62, 711 N.E.2d 761, citing *State v. Yemma* (Aug. 9, 1996), 11th Dist. No. 95-P-0156, 1996 Ohio App. LEXIS 3361, 1996 WL 495076. Whether a request to perform field sobriety tests was reasonable is to be considered under the totality of the circumstances. *Id.* at 63." *State v. Trevarthen*, 11th Dist. Lake No. 2010-L-046, 2011-Ohio-1013, ¶ 15.

**{¶32}** Factors to consider when assessing if an officer had reasonable suspicion of intoxication to justify field sobriety tests include:

**{¶33}** "'(1) the time and day of the stop (Friday or Saturday night as opposed to, *e.g.,* Tuesday morning); (2) the location of the stop (whether near establishments selling alcohol); (3) any indicia of erratic driving before the stop that may indicate a lack of coordination (* * * weaving, unusual braking, etc.); (4) whether there is a cognizable report that the driver may be intoxicated; (5) the condition of the suspect's eyes (bloodshot, glassy, glazed, etc.); (6) impairments of the suspect's ability to speak (slurred speech, overly deliberate speech, etc.); (7) the odor of alcohol coming from the interior of the car, or, more significantly, on the suspect's person or breath; (8) the intensity of that odor, as described by the officer ("very strong," "strong," "moderate," "slight," etc.); (9) the suspect's demeanor (belligerent, uncooperative, etc.); (10) any actions by the suspect after the stop that might indicate a lack of coordination (dropping keys, falling over, fumbling for a wallet, etc.); and (11) the suspect's admission of alcohol consumption, the number of drinks had, and the amount of time in which they were consumed, if given. All these factors, together with the officer's previous experience in dealing with drunken drivers, may be taken into account by a reviewing court in determining whether the officer

8

acted reasonably.' [*State v. Evans*, 127 Ohio App.3d 56, 711 N.E.2d 761, fn. 2 (11th Dist.1998)]." *Id.* at ¶ 17.

{¶34} As previously stated, Lee paced Raybould's vehicle and determined that he was speeding. Thereafter, Lee smelled a strong odor of alcohol from Raybould, who admitted to drinking four beers and that he was coming from a bar. Lee described Raybould as slurring his speech and having red, blood-shot eyes. It was approximately two in the morning on a Saturday. And although Lee had only been a trooper for a short period of time, he explained that most of his training focused on identifying alcohol impaired drivers.

{¶35} Thus, upon considering the totality of the circumstances, Lee had specific, articulable facts on which to base his request for Raybould to perform the field sobriety tests, regardless of whether he "passed" the portable breathalyzer test. Thus, we need not determine whether the trial court acted properly in not considering the PBT results since the issue is moot. *Shelko v. Dolinar*, 11th Dist. Lake No. 88-L-13-161, 1990 WL 93127, *5 (June 29, 1993) (Ford, J., dissenting) (defining moot as having no practical effect on the existing controversy).

{¶36} Raybould's second assigned error lacks merit and is overruled.

{¶37} The trial court's decision is affirmed.


TIMOTHY P. CANNON, J.,

MARY JANE TRAPP, J.,

concur.

9