OPINION
{¶ 1} Defendant-appellant, William Hill, appeals from two Columbiana County Municipal Court judgments overruling his motion to suppress and convicting him of driving under the influence of alcohol following a jury trial.
 {¶ 2} In the early morning hours of September 17, 2005, Officer Karl Toy observed appellant speeding on Vine Street and again on Third Street. The speed limit on both of those streets is 25 miles per hour. Officer Toy clocked appellant traveling at 40 and 38 miles per hour.
 {¶ 3} Officer Toy subsequently effectuated a traffic stop of appellant. When he approached appellant's car, he noticed a moderate odor of an alcoholic beverage. He also observed that appellant's eyes were bloodshot and glassy, his speech was slurred, and his movements were slow. Officer Toy asked appellant to step out of his vehicle. According to Officer Toy, before exiting his vehicle, it took appellant five tries to engage his emergency brake.
 {¶ 4} Once appellant exited his vehicle, Officer Toy asked him to perform three standardized field sobriety tests — the horizontal gaze nystagmus (HGN) test, the walk-and-turn test, and the one-leg-stand test. Based on appellant's performance on these tests and the officer's previously mentioned observations, Officer Toy placed appellant under arrest for driving under the influence of alcohol (DUI) and transported him to the Salem Police Department where he read appellant his Miranda rights and asked him to take a breathalyzer test. Officer Toy permitted appellant to first call his wife for advice. After speaking with his wife, appellant told Officer Toy that he was refusing to take the breathalyzer test because he would not be able to pass the test. Consequently, Officer Toy placed appellant under an administrative license suspension.
 {¶ 5} Officer Toy issued appellant a citation for DUI, a first-degree misdemeanor in violation of R.C. 4511.19(A)(1)(a), and for speeding, a minor misdemeanor in violation of R.C. 4511.21.
 {¶ 6} Appellant filed a motion to suppress the results of his field sobriety tests, statements he made, and Officer Toy's observations and opinions regarding *Page 2 
his sobriety. He argued that the officer did not have reasonable suspicion to administer field sobriety tests or probable cause to arrest him. The court held a hearing on the motion where it heard testimony from Officer Toy. It subsequently overruled appellant's motion, except that it ordered suppressed any statements appellant made before being read his Miranda rights.
 {¶ 7} The matter proceeded to a jury trial where the jury found appellant guilty of DUI. Additionally, the court found appellant guilty of speeding. The court subsequently sentenced appellant to 30 days in jail, fined him $550 and suspended his license for one year on the DUI conviction. Additionally, it fined appellant $30 for the speeding conviction.
 {¶ 8} Appellant filed a timely notice of appeal on April 26, 2007. This court stayed appellant's sentence pending his appeal.
 {¶ 9} Appellant raises three assignments of error. His first and second assignments of error assert that the trial court erred in overruling his motion to suppress. Thus, they share the same standard of review.
 {¶ 10} Our standard of review with respect to a motion to suppress is first limited to determining whether the trial court's findings are supported by competent, credible evidence. State v. Winand (1996),116 Ohio App.3d 286, 288, 688 N.E.2d 9, citing Tallmadge v. McCoy (1994),96 Ohio App.3d 604, 608, 645 N.E.2d 802. Such a standard of review is appropriate as, "[i]n a hearing on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." State v. Venham (1994), 96 Ohio App.3d 649, 653,645 N.E.2d 831. An appellate court accepts the trial court's factual findings and relies upon the trial court's ability to assess the witness's credibility, but independently determines, without deference to the trial court, whether the trial court applied the appropriate legal standard. State v. Rice (1998), 129 Ohio App.3d 91, 94, 717 N.E.2d 351. A trial court's decision on a motion to suppress will not be disturbed when it is supported by substantial credible evidence. Id. *Page 3 
 {¶ 11} With this standard in mind, we move on to consider appellant's first and second assignments of error.
 {¶ 12} Appellant's first assignment of error states:
 {¶ 13} "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THERE WAS REASONABLE SUSPICION TO CONTINUE TO DETAIN MR. HILL AND REQUEST THAT HE PERFORM STANDARDIZED FIELD SOBRIETY TESTS IN VIOLATION OF MR. HILL'SFOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE 1 SECTION 14 OF THE OHIO CONSTITUTION."
 {¶ 14} Appellant argues that Officer Toy did not have reasonable suspicion to detain him beyond issuing him a speeding citation. He points out that Officer Toy admitted that speeding is not indicative of impaired driving. He also argues that he did not operate his vehicle in a manner that suggested impaired driving. And he points out that he performed well in providing Officer Toy his license, registration, and proof of insurance. The only observations that Officer Toy could point to for reasonable suspicion of impairment, appellant argues, were bloodshot, glassy eyes, slurred speech, and an odor of alcoholic beverage. Appellant points out that Officer Toy never asked him how much he had to drink, when he last slept, or any other questions. Thus, appellant concludes that Officer Toy did not have reasonable suspicion to request that he exit his car and perform the field sobriety tests.
 {¶ 15} In order to administer field sobriety tests, an officer must have reasonable suspicion, based on specific and articulable facts, to believe a person is under the influence of alcohol. State v.Wilson, 7th Dist. No. 01-CA-241, 2003-Ohio-1070, at ¶ 17. When considering whether an officer had reasonable suspicion to administer field sobriety tests, the court is to examine the totality of the circumstances and determine whether reasonable grounds existed, including the person's actions before, during, and after driving the vehicle. Id., citing Atwell v. State (1973), 35 Ohio App.2d 221, 227,301 N.E.2d 709. *Page 4 
 {¶ 16} At the suppression hearing, Officer Toy pointed to several factors that gave him reasonable suspicion that appellant was under the influence of alcohol. He stated the first thing that drew his attention to appellant's vehicle was that appellant accelerated quickly. (Sup. Tr. 6). When Officer Toy approached appellant's vehicle, he smelled a moderate odor of an alcoholic beverage. (Sup. Tr. 9, 11). He also noticed that appellant's eyes were bloodshot and glassy. (Sup. Tr. 11). And Officer Toy stated that appellant's speech was slurred and his movements were slow. (Sup. Tr. 12-13). However, appellant had no problem producing his driver's license, registration, and proof of insurance. (Sup. Tr. 10).
 {¶ 17} Additionally, Officer Toy stopped appellant at 1:54 a.m. (Sup. Tr. 5). He clocked appellant traveling at 40 miles per hour in a 25-miles-per-hour zone and then traveling at 38 miles per hour in another 25-miles-per-hour zone. (Sup. Tr. 8).
 {¶ 18} We examine whether sufficient facts exist to constitute reasonable suspicion of driving while impaired on a case-by-case basis. The facts present in this case establish grounds for reasonable suspicion that appellant was impaired. Officer Toy smelled an odor of alcoholic beverage on appellant, observed that appellant's eyes were bloodshot and glassy, noted that appellant's speech was slurred, and noticed that appellant's movements were slow. Officer Toy noticed these four standard characteristics of an impaired driver before he even asked appellant to step out of his car.
 {¶ 19} In addition to these classic signs of impairment, two other factors were present. Officer Toy stopped appellant at 1:54 a.m. This is a time when many people are traveling home from bars. The time of the stop is relevant in determining reasonable suspicion. State v.Evans (1998), 127 Ohio App.3d 56, 711 N.E.2d 761, fn. 2. And appellant was traveling 15 miles over the speed limit at one point and 13 miles over the speed limit at another point. Speeding is also relevant in establishing reasonable suspicion. Id. Thus, given the totality of the circumstances, reasonable suspicion existed for Officer Toy to administer field sobriety tests to appellant. *Page 5 
 {¶ 20} Furthermore, there is no requirement that an officer question a driver as to when he last slept, as appellant suggests, especially when the officer smells alcohol emanating from the driver. Wilson, 7th Dist. No. 01-CA-241, at ¶ 20. And appellant can point to no authority that the officer must ask the driver whether he has had anything to drink, as he suggests.
 {¶ 21} Accordingly, appellant's first assignment of error is without merit.
 {¶ 22} Appellant's second assignment of error states:
 {¶ 23} "THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THERE WAS PROBABLE CAUSE TO ARREST MR. HILL IN VIOLATION OF MR. HILL'SFOURTH AMENDMENT RIGHTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE 1
SECTION 14 OF THE OHIO CONSTITUTION."
 {¶ 24} Appellant contends here that Officer Toy did not have probable cause to arrest him. He argues that the state did not demonstrate that Officer Toy conducted the field sobriety tests in substantial compliance with the National Highway Traffic and Safety Administration (NHTSA) manual and did not know the rate of error for the tests. Without the evidence of his performance on the field sobriety tests, appellant argues, there was no probable cause to arrest him.
 {¶ 25} The Ohio Supreme Court has recognized that since the amendment of R.C. 4511.19 by the Ohio Legislature in 2003, field sobriety tests are no longer required to be conducted in strict compliance with standardized testing procedures. State v. Schmitt, 101 Ohio St.3d 79,801 N.E.2d 446, 2004-Ohio-37, at ¶ 9. "Instead, an officer may now testify concerning the results of a field sobriety test administered in substantial compliance with the testing standards." Id. This holding further enforces R.C. 4511.19(D)(4)(b), which provides in part, that evidence and testimony of the results of a field sobriety test may be presented "if it is shown by clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests that were in effect at the time the tests were administered, including, *Page 6 
but not limited to, any testing standards then in effect that were set by the national highway traffic safety administration."
 {¶ 26} In determining whether the state has shown by clear and convincing evidence that the officer administered the tests in substantial compliance with testing standards, the allocation of burden of proof for a motion to suppress must be determined. In order to suppress evidence or testimony concerning a warrantless search, a defendant must "raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." Xenia v. Wallace (1988),37 Ohio St.3d 216, 524 N.E.2d 889, paragraph one of the syllabus. The defendant is required to set forth the basis for the challenge "only with sufficient particularity to put the prosecution on notice of the nature of the challenge." State v. Purdy, 6th Dist. No. H-04-008,2004-Ohio-7069, at ¶ 15, citing State v. Shindler (1994),70 Ohio St.3d 54, 57-58, 636 N.E.2d 319. After the defendant sets forth a sufficient basis for a motion to suppress, the burden shifts to the state to demonstrate proper compliance with the regulations involved. Id. citingState v. Johnson (2000), 137 Ohio App.3d 847, 851, 739 N.E.2d 1249.
 {¶ 27} In this case, appellant asserted in his motion to suppress that Officer Toy did not administer the field sobriety tests in substantial compliance with the NHTSA manual. He then made an argument that the statute mandating only substantial compliance with NHTSA standards, instead of strict compliance, was unconstitutional. He never gave a factual basis for why he believed the officer did not comply with the NHTSA standards. He pointed to no specific facts that occurred nor to any instructions by Officer Toy that he believed failed to comply with the NHTSA manual.
 {¶ 28} This court has previously found such blanket statements to be not specific enough to shift the burden to the state to demonstrate proper compliance with the NHTSA regulations. See State v. Arnold, 7th Dist. No. 05-CO-60, 2006-Ohio-5228, at ¶ 12 ("Appellant failed to allege facts in his motion as to how * * * [the officer] instructed him to perform the tests and how they did not comply with NHTSA *Page 7 
standards. For this reason, the trial court did not err in denying appellant's motion to suppress the results of his field sobriety tests."); State v. Gozdan, 7th Dist. No. 03-CA-792, 2004-Ohio-3209, at ¶ 10 ("merely stating that * * * [the field sobriety test] was not performed in strict compliance provides no factual basis to support the allegation.")
 {¶ 29} Based on this court's prior holdings, appellant never shifted the burden to the state to prove that Officer Toy administered the field sobriety tests in substantial compliance with the NHTSA standards. On this basis alone, we could affirm the trial court's judgment overruling appellant's motion to suppress. However, the trial court found that Officer Toy administered the tests in substantial compliance with the NHTSA manual. Thus, we will briefly review its finding.
 {¶ 30} Officer Toy stated that he was familiar with the NHTSA manual and that he received training regarding the NHTSA standards. (Sup. Tr. 15). He also testified that he conducted each of the three field sobriety tests in compliance with the NHTSA standards. (Sup. Tr. 17, 19, 21). He further stated that he followed the procedures he was trained to follow. (Sup. Tr. 60). And he stated that he explained each test to appellant. (Sup. Tr. 16).
 {¶ 31} On cross-examination, Officer Toy did have some difficulty naming various steps in his investigation. And he admitted that he did not know the rate of error for each individual field sobriety test. (Sup. Tr. 55-56). However, this does not negate the fact that Officer Toy testified that he was trained to follow the NHTSA standards and that he did in fact follow these standards in administering each test to appellant. Furthermore, there was no evidence that Officer Toy administered any of the tests incorrectly. Thus, if we were to consider appellant's motion to suppress the results of the field sobriety tests, despite the fact that his motion did not give the state proper notice, we would conclude the trial court's finding that Officer Toy conducted the tests in substantial compliance with the NHTSA standards was supported by the evidence. *Page 8 
 {¶ 32} Given the fact that Officer Toy could take into consideration appellant's performance on the field sobriety tests, he had probable cause to arrest appellant for DUI. The Ohio Supreme Court has defined probable cause to arrest for DUI as "whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." State v. Homan (2000), 89 Ohio St.3d 421, 427,732 N.E.2d 952 (Superseded by statute on other grounds as stated in R.C. 4511.19(D)(4)(b).)
 {¶ 33} In addition to the evidence of reasonable suspicion set out above, Officer Toy testified to the following.
 {¶ 34} When Officer Toy asked appellant to step out of his vehicle, he asked appellant to engage the emergency brake. (Sup. Tr. 13). Appellant attempted to engage the brake five times, missing the pedal each time. (Sup. Tr. 13-14).
 {¶ 35} Officer Toy then administered the field sobriety tests to appellant. The first test was the HGN. Officer Toy stated that he was unable to detect smooth pursuit on each of appellant's eyes. (Sup. Tr. 17). These were two clues of impairment that he was looking for. (Sup. Tr. 17-18). However, Officer Toy was unable to complete the test because appellant refused to follow the pen with his eyes, as was required to complete the test. (Sup. Tr. 17-18). Officer Toy also noted that appellant swayed during this test. (Sup. Tr. 18).
 {¶ 36} The second test was the walk-and-turn test. Officer Toy stated that appellant moved his foot in an attempt to maintain his balance and was unable to stand heel-to-toe while Officer Toy gave him the instructions. (Sup. Tr. 19-20). Appellant did not touch heel-to-toe, as was required, on a total of eight steps. (Sup. Tr. 20). Additionally, appellant stepped off the line once and raised his hands more than six inches. (Sup. Tr. 20). Officer Toy stated that these clues were all signs of impairment. (Sup. Tr. 20-21).
 {¶ 37} The third and final test was the one-leg-stand test. While Officer Toy explained the test to appellant, he noticed that appellant was swaying again. (Sup. *Page 9 
Tr. 21). Once appellant attempted the test, he put his foot down three times within 15 seconds. (Sup. Tr. 21). Officer Toy then discontinued the test. (Sup. Tr. 21). He stated that he was to discontinue the test for the subject's own safety if the subject put his foot down three times. (Sup. Tr. 21).
 {¶ 38} Officer Toy then testified that based on his observations of appellant, coupled with his experience and training, he believed that appellant was operating his vehicle while under the influence of alcohol. (Sup. Tr. 22-23). Therefore, he placed appellant under arrest. (Sup. Tr. 23).
 {¶ 39} Given appellant's performance on the field sobriety tests, his difficulty engaging his emergency brake, the odor of alcohol, his slurred speech, his bloodshot and glassy eyes, his slow movements, his speeding, and the late hour of his stop, Officer Toy had probable cause to arrest appellant for DUI. Accordingly, appellant's second assignment of error is without merit.
 {¶ 40} Appellant's third assignment of error states:
 {¶ 41} "MR. HILL'S CONVICTION WAS AGAINST THE WEIGHT OF THE EVIDENCE AND HE WAS DENIED DUE PROCESS OF LAW UNDER THE FOURTEENTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND OHIO CONSTITUTION."
 {¶ 42} Here appellant contends that his DUI conviction was against the weight of the evidence. He does not take issue with his speeding conviction.
 {¶ 43} In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view *Page 10 
the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 44} The jury convicted appellant of DUI in violation of R.C. 4511.19(A)(1)(a), which provides that no person shall operate a vehicle while under the influence of alcohol.
 {¶ 45} At trial, Officer Toy was the only witness for the state. His testimony was mostly the same as his testimony at the suppression hearing. He stopped appellant for speeding at 1:54 a.m. (Trial Tr. 93). He clocked appellant traveling at 40 miles per hour and then at 38 miles per hour, both times in 25-miles-per-hour zones. (Trial Tr. 97-98). When he approached appellant's vehicle, he smelled a moderate odor of an alcoholic beverage. (Trial Tr. 101). He noticed that appellant's eyes were bloodshot and glassy. (Trial Tr. 102). He observed that appellant's speech was slurred and that appellant's movements were slow. (Trial Tr. 102). When he asked appellant to engage the emergency brake and exit the vehicle, appellant missed the brake pedal five times. (Trial Tr. 104). Appellant refused to complete the HGN test after failing two clues. (Trial Tr. 111). Appellant missed at least four clues on the walk-and-turn test. (Trial Tr. 116-17). Appellant put his foot down three times on the one-leg-stand test and then Officer Toy had to discontinue the test. (Trial Tr. 118-19).
 {¶ 46} Additionally, Officer Toy testified that once appellant was at the police department, he requested that appellant take a breathalyzer test. (Trial Tr. 122-24). Appellant asked if he could first contact his wife to seek her opinion on what he should do. (Trial Tr. 124). Officer Toy allowed him to do so. (Trial Tr. 124). Appellant told Officer Toy that his wife worked for a Columbiana County Common Pleas Court Judge. (Trial Tr. 125-26). After appellant hung up the phone, he refused to take the breathalyzer test. (Trial Tr. 126). Appellant stated to Officer Toy that he was refusing the test because "there is no way I can pass the new limit of point zero eight." (Trial Tr. 126). *Page 11 
 {¶ 47} Additionally, Officer Toy testified that in his opinion, based on these facts and circumstances, appellant was impaired. (Trial Tr. 120-21).
 {¶ 48} Officer Toy did testify on cross-examination that appellant had no problem producing his driver's license, registration, and proof of insurance upon request. (Trial Tr. 146). He also admitted that while he was following appellant in his car, he never observed appellant travel left of center, straddle a lane, or follow too close to another vehicle. (Trial Tr. 150). And Officer Toy stated that appellant gave him no problems when he pulled appellant over. (Trial Tr. 150). Additionally, Officer Toy admitted that he never asked appellant if he had anything to drink. (Trial Tr. 161).
 {¶ 49} Given this evidence, we cannot conclude that the jury clearly lost its way in finding appellant guilty of DUI. The jury had ample evidence from which it could reasonably conclude that appellant was driving his vehicle while under the influence of alcohol including appellant's poor performance on the field sobriety tests, his slurred speech, his bloodshot and glassy eyes, his slow movements, his difficulty engaging his emergency brake, and the odor of alcohol.
 {¶ 50} Furthermore, appellant contends that his admission at the police station that he would not be able to pass the breathalyzer test should not have been considered as evidence of DUI. However, appellant was in the best position to know how much alcohol he had consumed and if he was actually impaired. Thus, his opinion on the subject was highly relevant and, therefore, admissible.
 {¶ 51} Appellant additionally contends that because Officer Toy did not know the error rate for the field sobriety tests, the court should not have permitted him to give his opinion that appellant was impaired. But appellant had the opportunity to cross-examine Officer Toy and bring to the jury's attention the fact that he did not know the error rate for the field sobriety tests. The jury was then free to use this information in deciding how much weight to give to Officer Toy's opinion.
 {¶ 52} Accordingly, appellant's third assignment of error is without merit. *Page 12 
 {¶ 53} For the reasons stated above, the trial court's judgment is hereby affirmed.
Vukovich, J., concurs.
 DeGenaro, P.J., concurs. *Page 1