# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

JOSEPH EDWARD JENDRUSIK JR.,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 21 BE 0043

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 21 CR 165

**BEFORE:**
Carol Ann Robb, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor*, Atty. Daniel P. Fry,* Assistant Prosecuting Attorney, 52160 National Road, St. Clairsville, Ohio 43950 for Plaintiff-Appellee and

*Atty. Adam L. Myser*, Myser & Myser, 320 Howard Street, Bridgeport, Ohio 43912 for Defendant-Appellant.

Dated:  September 30, 2022

**Robb, J.**

{¶1}   Appellant, Joseph Edward Jendrusik Jr., appeals his sentence and the order denying his motion to suppress after pleading no contest to operating a motor vehicle while under the influence of alcohol (OVI) in violation of R.C. 4511.19(A)(1)(e) and (G)(1)(e), a third-degree felony, with a repeat offender specification under R.C. 2941.1413.  He was sentenced to eight years in prison, consisting of a five-year term for his repeat OVI offender specification to run consecutive to 36 months for the underlying OVI conviction, a $5,000 fine, and a lifetime license suspension.

{¶2}   Appellant argues on appeal the trial court should have suppressed the results of his field sobriety test, and absent the results, the officer lacked probable cause to arrest him.  Appellant also claims the trial court erred in imposing the maximum sentence.  For the following reasons, we find that although suppression of his field sobriety test was warranted, the trooper nevertheless had probable cause to arrest him for operating his vehicle while under the influence.  We also find his sentence is supported by the record, and thus we affirm.

### Statement of the Case

{¶3}   On June 29, 2021,[1] an anonymous caller reported a driver was operating his car while under the influence in Barkcamp State Park.  Ohio State Patrolman Scott Bayless was dispatched and found Appellant driving a car that matched the description in the area.  After pulling Appellant over, Bayless noticed Appellant's eyes were bloodshot and glassy and his breath smelled like alcohol.  Bayless also noted Appellant's speech was slurred.  He had Appellant exit the vehicle.  At this point, Bayless observed Appellant having difficulty standing, and Bayless had to catch him from falling in a ditch.  Bayless also observed Appellant had urinated in his pants.  (Suppression Tr. 6-9.)

{¶4}   As a result of Bayless' observations, he asked Appellant to complete certain field sobriety tests.  Appellant advised Bayless he could not complete two of the three tests because he had bad knees.  The only test Bayless conducted was the horizontal

---

[1] The grand jury indictment states the offense occurred on or about June 29, 2021 whereas the Ohio State Highway Patrolman, who arrested Appellant, testified that the offense occurred July 1, 2021.  The precise date of the offense is not an issue on appeal.

gaze nystagmus (HGN) test, which Bayless said Appellant failed. Bayless placed Appellant under arrest and assisted him into the cruiser. (Suppression Tr. 9-14.)

{¶5} Bayless administered Appellant's urinalysis test at 3:11 p.m., approximately two hours after the stop, and it tested in excess of the legal limit. (Suppression Tr. 21-24.) Bayless also remembered Appellant telling him he drank two warm beers that day but he could not remember if Appellant made this admission before or after he was arrested. (Suppression Tr. 20.)

{¶6} Appellant was charged via a grand jury indictment with three counts: 1.) operating a motor vehicle under the influence in violation of R.C. 4511.19(A)(1)(a), (G)(1)(e), a third-degree felony with a specification as a repeat offender, indicating that within 20 years of the offense Appellant was convicted of five OVI violations; 2.) operating a motor vehicle under the influence of alcohol with a certain blood alcohol concentration, in violation of R.C. 4511.19(A)(1)(e), (G)(1)(e), a third-degree felony, with a repeat offender specification; and 3.) operating a motor vehicle on a suspended license in violation of R.C. 4510.14(A), (B)(2), a first-degree misdemeanor. (August 4, 2021 Superseding Indictment.)

{¶7} Appellant initially plead not guilty and was released on bond. After the exchange of discovery, Appellant filed a combined motion to dismiss, motion to suppress, and motion in limine seeking the court to dismiss the charges against him, or alternatively to suppress evidence. In part, he urged the court to suppress the results of the field sobriety test as not in accordance with governing standards. He also alleged the officer lacked probable cause to arrest him. (August 18, 2021 Motion.) The state did not file a written response. The trial court held a hearing on the motion in September of 2021, and overruled it. (October 6, 2021 Judgment Entry.)

{¶8} Appellant subsequently changed his plea and plead no contest to count two and the attendant specification, with the state agreeing to dismiss counts one and three. Appellant was convicted of operating a motor vehicle while under the influence of alcohol with the specification that he had five prior OVI convictions during the prior 20 years. Appellant was sentenced to five years for the repeat OVI offender offense to be served consecutive to 36 months in the penitentiary for the underlying OVI offense, for an aggregate sentence of eight years, a $5,000 fine, and a lifetime license suspension. (October 8, 2021 No Contest Plea, Adjudication, and Sentencing Entry.)

Case No. 21 BE 0043

**{¶9}** Appellant timely appealed and raises three assignments of error.

### Motion to Suppress Field Sobriety Test Results

**{¶10}** Appellant's first assignment of error asserts:

"The trial court erred in not suppressing the results of the field sobriety tests."

**{¶11}** Appellant contends the trial court should have suppressed the results of his field sobriety tests pursuant to *State v. Bish*, 191 Ohio App.3d 661, 2010-Ohio-6604, 947 N.E.2d 257 (7th Dist.), because the state failed to establish the test was administered in compliance with the National Highway Traffic Safety Administration (NHTSA) manual. He claims that while the state presented testimony from the state trooper detailing the manner in which the test was conducted, it failed to procure any corresponding and necessary testimony about the standards governing the test and likewise did not admit the NHTSA manual outlining the administration of the test. Absent this information, Appellant argues the court could not determine whether the test was administered in accordance with the governing standards. Thus, he seeks reversal and an order excluding the test results.

> Appellate review of a motion to suppress presents a mixed question of law and fact. When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses. * * * Consequently, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. * * * Accepting these facts as true, the appellate court must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard.

*State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8.

**{¶12}** To admit field sobriety test results, the state must show the police administered the test in substantial compliance with standardized testing procedures. *Strongsville v. Troutman,* 8th Dist. Cuyahoga No. 88218, 2007-Ohio-1310, at ¶ 22, citing R.C. 4511.19.

**{¶13}** R.C. 4511.19(D)(4)(b) states a court shall admit officer testimony about the results of field sobriety tests or other evidence about the results, which are admissible under the Rules of Evidence, for the trier of fact to consider "if it is shown by clear and

convincing evidence that the officer administered the test in substantial compliance with the testing standards for any reliable, credible, and generally accepted field sobriety tests * * *."

**{¶14}** Only general testimony is required to establish substantial compliance with field sobriety tests *unless* a defendant raises a specific and particular challenge to a test. *State v. Bish*, *supra,* at ¶ 16. When presented with a specific challenge as grounds for suppression, the burden shifts to the state to prove substantial compliance. *Id.; State v. Holzapfel*, 2nd Dist. Darke No. 2013-CA-17, 2014-Ohio-4251, ¶ 11. If there is insufficient evidence to support that a test was performed in substantial compliance with the applicable standards, suppression is warranted. *Id*. at ¶ 17.

**{¶15}** Here, Appellant argued in his suppression motion that the horizontal gaze nystagmus (HGN) test was inadmissible since it was out of substantial compliance with the NHTSA guidelines. He challenged the officer's alleged failure to conduct a medical check, failure to "grade" the test, failure to perform the test for the required duration, failure to perform the HGN test the number of required times, and failure to stop when nystagmus was observed. (August 18, 2021 Motion.) Because Appellant sufficiently challenged the administration of the field sobriety tests in his motion to suppress with particularity, the burden shifted to the state to establish via clear and convincing evidence that the officer administered the test in substantial compliance with the testing standards. *State v. Hill*, 7th Dist. Columbiana No. 07-CO-12, 2008-Ohio-3249, ¶ 26, citing *State v. Johnson*, 137 Ohio App.3d 847, 851, 739 N.E.2d 1249 (2000).

**{¶16}** Thus, it was incumbent upon the state to produce some evidence establishing the testing standards either via testimony or introduction of the testing manual as evidence, in addition to evidence detailing how the officer administered the test for comparative purposes. *State v. Akers*, 2016-Ohio-7216, 72 N.E.3d 135, ¶ 26 (7th Dist.), citing R.C. 4511.19(D)(4)(b).

**{¶17}** In response, the state contends there was sufficient testimony at the hearing establishing the HGN test was administered in substantial compliance with the manual and supporting the trial court's conclusion overruling the motion to suppress. We disagree.

**{¶18}** In *Akers*, this court found the officer's testimony about the field sobriety test inadmissible. We explained not only was there no mention of the NHTSA manual or the

requirements it contained, but also found the trooper's testimony lacked any detail as to what the results should have been in order to determine some level of impairment. *Id.* at ¶ 28. "[H]aving a trooper testify about how the trooper administered various tests is not sufficient. * * * Based on such evidence alone, it would be impossible to determine if the tests were performed in substantial compliance with the NHTSA or any other set of standards." *Id.* ¶ 30, citing *Bish* at ¶ 28. *Accord State v. Smith*, 7th Dist. Columbiana No. 13 CO 10, 2014-Ohio-2933, ¶ 19-21 (field sobriety test results should have been suppressed due to lack of clear and convincing evidence establishing the governing standards).

{¶19} In this case, Ohio State Highway Patrolman Scott Bayless was the only witness to testify at the September 13, 2021 suppression hearing. He was a patrolman for 17 years at the time of his testimony. He received specialized training in identifying impaired drivers during his basic training with instructional updates for administering field sobriety tests throughout his career. Bayless testified he has administered approximately "a couple hundred" field sobriety tests. (Tr. 3-5.)

{¶20} He testified that on July 1, 2021 at approximately one in the afternoon, he learned via dispatch about a possible impaired driver in the Barkcamp State Park beach area. An unknown caller reported an impaired driver in this area, described the vehicle, and provided the license plate number. About five minutes later, Bayless saw the matching vehicle and initiated a traffic stop. (Tr. 6-8.)

{¶21} Bayless pulled over Appellant's vehicle because it had a cracked windshield, an equipment violation. Bayless approached the driver's side of the vehicle and smelled alcohol. He also noticed Appellant's eyes were bloodshot and glassy. Due to these indicators, Bayless asked Appellant to exit the vehicle. Bayless described Appellant as "unsteady on his feet." Bayless also saw Appellant had urinated in his jeans. Bayless continued to smell alcohol during the safety pat down. (Tr. 8-10.)

{¶22} At that point, Bayless decided to conduct field sobriety tests, but was only successful in administering one because Appellant was unable to stand. Bayless conducted the HGN test during which Appellant had to lean or catch his balance on the cruiser. Bayless then had to catch Appellant and stabilize him because he was losing balance toward a ditch. (Tr. 9-11.)

**{¶23}** Bayless also indicated Appellant's speech was slurred but conceded he had never heard Appellant speak before that day. Bayless said Appellant's speech was consistent with someone who was impaired. (Tr. 11-12.)

**{¶24}** Appellant told Bayless he had problems with his knees from the military, but Appellant did not indicate he had any medical issues with his eyes. Bayless asked him if he was on any medication, and Appellant told him the only one that would "impair him" was the Valium he took that morning. Appellant told him he takes several prescription medications but did not identify which ones, and Bayless did not inquire. (Tr. 17-18.)

**{¶25}** Bayless stated that in his opinion, Appellant failed the HGN test. He did not identify or explain the procedural requirements from the manual for each aspect of the test, but Bayless described what he did and how he administered each feature, without referencing the manual or stating he did so consistent with the applicable standards. During Bayless' direct examination, the state did not reference the NHTSA manual or any other HGN test guidelines. The state likewise did not ask Bayless to confirm the applicable NHTSA standards through his testimony or as an exhibit. (Tr. 12-14.)

**{¶26}** On cross-examination, Bayless agreed Appellant was wearing sunglasses at the time of the stop and Bayless did not smell urine. Bayless recalled looking down at Appellant's eyes and seeing them behind his glasses during the initial approach and explained he had Appellant remove his glasses for the HGN test. Bayless described smelling alcohol coming from Appellant's breath when counsel suggested Appellant may have spilled a beer. Bayless also acknowledged Valium could cause nystagmus and present a false positive on the HGN test. (Tr. 38.)

**{¶27}** Bayless provided more detail during his cross-examination about the HGN test and how he administered it than was provided on direct examination. He verified he was trained pursuant to the NHTSA manual and he generally conducted the test consistent with his training. Yet, he was not asked nor did he testify about the actual guidelines governing the administration of the HGN test to enable the court to assess whether he complied with them. (Tr. 40-43.) At the conclusion of his testimony, the court asked the following:

> Trooper, you talked about the time span during which you were performing
> the horizontal gaze nystagmus?
> THE WITNESS: Correct.

Case No. 21 BE 0043

THE COURT: You weren't sure exactly what the time was, but was the time factor that you've used consistent with your training?

THE WITNESS: Yes, it is. It's consistent among how I've – * * * It's just through conditioning. It's going to be consistent with all of my other tests that I've run.

(Tr. 51.)

**{¶28}** Bayless stated he successfully administered the HGN test and then separately told the court the test was performed consistent with his training. Bayless also agreed on cross-examination that he administered it consistent with the NHTSA Manual. Nevertheless, the state never had him identify the requirements, explain the test or the number of "clues" that indicate impairment and did not introduce the NHTSA manual as an exhibit. Thus, the standards governing the HGN test were not before the court to compare to Bayless' testimony.

**{¶29}** As this court found in *Akers*, there was no testimony or evidence here showing what constitutes "failing" the HGN test. The state did not elicit testimony setting forth the contents of the NHTSA manual, proffer it as an exhibit, or ask the court to take judicial notice of it to enable the court to compare Bayless' testimony about his administration of the HGN test and whether he substantially complied with the standards. Moreover, Bayless did not testify about what the results had to be in order for him to conclude there was some level of impairment. He was not asked to identify or explain what the clues of impairment were, but instead testified in summary fashion about how he administered the test and then said Appellant had six clues of impairment without identifying them. Although there were references Bayless was trained, experienced, and used the NHTSA standards, the state did not identify what the standards were. Thus, based on the lack of evidence, it was impossible for the court to determine if the test was performed in substantial compliance with the applicable guidelines. *Akers, supra,* at ¶ 30-31, citing *Bish* at ¶ 28.

**{¶30}** Based on this court's precedent set forth in *Bish* and *Akers,* we conclude suppression was warranted and this assigned error has merit. Notwithstanding, as set forth in Appellant's second assigned error, the trooper still had probable cause to arrest him for OVI without the HGN test.

**Probable Cause to Arrest**

**{¶31}** Appellant's second assignment of error asserts:

"The trial court erred in finding that the arresting officer had probable cause to place the defendant-appellant under arrest for a violation of R.C. 4511.19, OVI."

**{¶32}** Appellant argues the trooper's observations that Appellant appeared under the influence, without the result of the HGN test, were not enough for probable cause to arrest for driving under the influence. The state contends even when excluding the results of the HGN test, there was more than enough evidence establishing probable cause for Appellant's arrest based on the totality of the circumstances. We agree.

**{¶33}** Whether there was probable cause to arrest is a legal issue that we review de novo. *Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657 (1996); *Columbus v. Horton*, 10th Dist. Franklin No. 13AP-966, 2014-Ohio-4584, ¶ 13.

**{¶34}** An arrest without a warrant violates the Fourth Amendment unless the arresting officer has probable cause to make the arrest. "The standard for determining whether there was probable cause to arrest for OVI is whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." *State v. Bish*, 191 Ohio App.3d 661, 2010-Ohio-6604, 947 N.E.2d 257, ¶ 47 (7th Dist.), citing *State v. Homan*, 89 Ohio St.3d 421, 427, 732 N.E.2d 952 (2000). "That determination is based on the totality of the facts and circumstances surrounding the arrest." *Id.*

**{¶35}** The totality of the circumstances surrounding a stop can support a finding of probable cause to arrest even if field sobriety tests were not administered. *State v. Penix*, 11th Dist. Portage No. 2007-P-0086, 2008-Ohio-4050, ¶ 29. If a defendant successfully challenges field sobriety tests and the results are suppressed, a police officer may testify about her observations made while administering the field tests. *State v. Schmitt,* 101 Ohio St.3d 79, 2004-Ohio-37, ¶ 14-15, superseded by statute on other grounds as stated in *State v. Miracle,* Butler App. No. CA2003-11-275, CA2003-11-283, 2004-Ohio-7137, ¶ 18; *State v. Griffin*, 12th Dist. Butler No. CA2005-05-118, 2006-Ohio-2399, ¶ 11.

**{¶36}** *In State v. Wardle*, 7th Dist. Mahoning No. 16 MA 0150, 2017-Ohio-9238, ¶ 14, this court found that the defendant's erratic driving, using cigarette smoke to cover

the odor of alcohol, avoiding eye contact, and refusing to take field sobriety tests were sufficient to constitute probable cause to arrest for OVI.

**{¶37}** In *State v. Homan*, *supra*, the Ohio Supreme Court found the "defendant's erratic driving, her red and glassy eyes, the smell of alcohol on her breath, and her admission to consuming alcoholic beverages, amply supported the trooper's decision to place her under arrest, even where no field sobriety tests were performed or where the results were suppressed." *Akers, supra*, at ¶ 37, citing *Homan* at 427.

**{¶38}** In *State v. Leffler*, 7th Dist. Columbiana No. 18 CO 0032, 2019-Ohio-3964, ¶ 21, we found probable cause to arrest for driving under the influence based on Leffler's refusal to submit to field tests and chemical tests; trying to avoid eye contact; strong odor of alcohol; admission of drinking; glassy and bloodshot eyes; and slurred speech.

**{¶39}** Consistent with the foregoing cases, there was more than enough evidence based on Bayless' observations here for him to have probable cause to arrest Appellant even when the HGN test results are excluded. As stated, Bayless testified Appellant had glassy and bloodshot eyes, slurred speech, and his breath smelled of alcohol. After Appellant exited his car, Bayless also noticed he had urinated in his jeans. Appellant was also unable to stand without leaning on the cruiser, and Bayless had to catch him to prevent him from falling in a ditch.

**{¶40}** Based on these observations, in addition to the fact a concerned citizen had called and given a description of Appellant's car and his license plate number, Bayless had probable cause to place Appellant under arrest for operating his vehicle under the influence. *State v. Stringer*, 4th Dist. Scioto No. 97CA2506, 1999 WL 105095, *12 ("An informant's tip may contribute to the circumstances supporting probable cause to arrest.")

**{¶41}** As for his glassy and red eyes, Appellant claims this was related to or caused by his removal of his sunglasses. Appellant also contends his inability to stand was the result of medical conditions, i.e., bad knees and consumption of Valium earlier that day. However, these facts and arguments were before the trial court for it to consider, and it rejected them. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8 ("When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses.")

**{¶42}** Based on the totality of the facts and circumstances surrounding the arrest, Bayless had probable cause to arrest Appellant for operating his vehicle while under the influence even without the results of the HGN test. Accordingly, Appellant's second assignment of error lacks merit.

## Sentencing

**{¶43}** Appellant's third assignment of error asserts:

"The trial court erred in the institution of its sentence in that said sentence is not supported by the record nor by findings under R.C. 2929.13 or R.C. 2929.14."

**{¶44}** Appellant argues the trial court erred in sentencing him to the maximum allowable sentence because none of the "more serious" factors were applicable. He also contends the trial court did not consider his military service or that his alcohol issues stem from his time in the military. Appellant essentially urges us to find his sentence is unsupported by the record. We disagree.

**{¶45}** R.C. 2953.08(G)(2) sets forth our standard of review when considering a challenge to a trial court's criminal sentencing decision. It states:

> The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

> The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's standard for review is not whether the sentencing court abused its discretion. The appellate court may take any action authorized by this division if it clearly and convincingly finds either of the following:

> (a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

> (b) That the sentence is otherwise contrary to law.

**{¶46}** "'Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty

as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *State v. Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22, quoting *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.  Thus, we are authorized to "increase, reduce, or otherwise modify a sentence only when [we] clearly and convincingly find * * * that the sentence is (1) contrary to law and/or (2) unsupported by the record." *State v. McGowan,* 147 Ohio St.3d 166, 2016-Ohio-2971, 62 N.E.3d 178, ¶ 1.

**{¶47}** In sentencing an offender for a felony, a trial court is required to consider the purposes of felony sentencing in R.C. 2929.11(A) and contemplate the statutory seriousness and recidivism factors in R.C. 2929.12(A).  *State v. Morefield,* 2014-Ohio-5170, 24 N.E.3d 633, ¶ 35 (2d Dist.).  A sentencing court does not have to use specific language and render precise findings to satisfactorily "consider" the relevant seriousness and recidivism factors.  *State v. Long,* 2014-Ohio-4416, 19 N.E.3d 981, ¶ 79 (11th Dist.).  A sentencing court is not required to indicate that it considered the statutes setting forth the overriding purposes of felony sentencing and the factors to consider in felony sentencing; instead, it is presumed to have considered them.  *State v. Coots*, 2015-Ohio-126, 27 N.E.3d 47, ¶ 82 (2d Dist.).  Moreover, when imposing the maximum sentence, a sentencing court is no longer required to enunciate special findings to support its imposition of the maximum term.  *State v. Hudson*, 2017-Ohio-645, 85 N.E.3d 371, ¶ 40 (7th Dist.).

**{¶48}** In fact, the Ohio Supreme Court has explicitly held "R.C. 2953.08(G)(2) does not allow an appellate court to modify or vacate a sentence based on its view that the sentence is not supported by the record under R.C. 2929.11 and 2929.12." *State v. Bryant*, __ Ohio St.3d. __, 2022-Ohio-1878, __ N.E. 3d.__, ¶ 22 citing *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 31, 39.  Notwithstanding, we conclude the record, applicable factors, and Appellant's history support Appellant's sentence.

**{¶49}** At Appellant's sentencing hearing, the trial court emphasized he has eight prior OVI convictions and this is his ninth.  The trial court relied on Appellant's presentence investigation report produced in connection with his prior criminal case, which was not supplemented in this case.  Neither party objected or requested supplementation.

According to the report, the court relayed Appellant also had convictions for a "physical control" OVI conviction, which it described as a different type of OVI; misdemeanor "hit-skip"; failure to control; domestic violence; and disorderly conduct. (Sentencing Tr. 26.)

{¶50} Moreover, the court highlighted that when Appellant was pulled over for the instant offense, he had recently been released from prison for a prior OVI conviction. (Sentencing Tr. 29.) The trial court also emphasized Appellant was risking his own safety as well as the safety of others by driving through the state park while he was so intoxicated that he was unable to stand. (Sentencing Tr. 26-27.)

{¶51} During the plea aspect of the hearing, the prosecutor relayed what the evidence would show at trial, and he recounted that an individual called to report Appellant driving drunk on the date of his arrest. The caller described Appellant driving down the middle of the road before pulling over to use the restroom. At that point, the witness described Appellant as not being able to stand and unable to locate the bathroom door. The witness smelled alcohol on him and saw Appellant urinate himself before he drove away. These facts were in addition to the trooper's testimony. (Sentencing Tr. 9-10.)

{¶52} The court then explained Appellant has not responded well to other sanctions, noting his history of driving while on community control in violation of the terms of his release before being ordered to return to the penitentiary. The court also emphasized Appellant already had a lifetime license suspension when he was pulled over for this offense. (Sentencing Tr. 29.)

{¶53} During the plea aspect of the hearing, the trial court acknowledged Appellant was an honorably-discharged veteran of the United States Army. Further, Appellant asked the court not to sentence him to prison and noted he had been a medic in the Army. (Sentencing Tr. 6 & 25.) Thus, the court was well aware of Appellant's service and is presumed to have considered it when fashioning his sentence. *Coots*, *supra*.

{¶54} Additionally, when Appellant spoke at the hearing, he did not express remorse but was focused on trying to avoid being sent to prison. He asked the court to allow him to stay home, indicating he does not need to drive because he had numerous people to help him. He also said he does not "need to drink," which tends to downplay his substance abuse issues. (Sentencing Tr. 24-26.) At that point, the court recited Appellant's prior offenses and detailed the facts underlying this offense before concluding

the public needed protection from him and he was imposing the sentence to protect Appellant and the community from Appellant driving under the influence and either killing himself or others as a result. (Sentencing Tr. 30.)

{¶55} Contrary to Appellant's argument, his time in the service was before the trial court for it to consider, and Appellant does not show the trial court did not consider this fact when fashioning his sentence. Further, Appellant does not direct this court's attention to anything showing a connection between Appellant's time in the military and his substance abuse issues. Based on the foregoing, we cannot clearly and convincingly find his sentence is unsupported by the record. *McGowan, supra*. This assignment of error lacks merit and is overruled.

## Conclusion

{¶56} Although this court concludes Appellant's first assigned error has merit and the trial court should have suppressed the field sobriety test results, there was no prejudice as a result. As detailed in Appellant's second assignment of error, even when excluding the HGN test results, the trooper had probable cause to arrest him for OVI based on the totality of the circumstances surrounding the stop.

{¶57} Last, Appellant's third assignment of error lacks merit and fails to show his sentence is contrary to law or unsupported by the record. Accordingly, the trial court's judgment is affirmed.


Donofrio, P J., concurs.

D'Apolito, J., concurs.

Case No. 21 BE 0043

[Cite as *State v. Jendrusik*, 2022-Ohio-3525.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs  waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**